FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM    INDEX NO. 69506/2022
NYSCEF DOC. NO. 1                                            RECEIVED NYSCEF: 12/19/2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-------------------------------------------X   Index No.

THE GALINN FUND LLC,

                              Plaintiff

            - against -                          **SUMMONS
                                                 AND NOTICE**

                                                 Plaintiff designates
                                                 Westchester County as the
                                                 place of trial.  Venue is
                                                 based upon the County in
                                                 which the mortgaged
                                                 premises is situated.

THE COMPLEX AT PORT CHESTER LLC,
JILL CARIDI, MICHAEL CARIDI,
and SAMAR CONSULTING, INC.,

                              Defendants
-------------------------------------------X

**TO THE ABOVE NAMED DEFENDANTS:**

        **YOU ARE HEREBY SUMMONED** to answer the complaint in this
action and to serve a copy of your answer, or, if the complaint is
not served with this summons, to serve a notice of appearance on the
attorney for the Plaintiff within twenty (20) days after the service
of this summons, exclusive of the day of service (or within thirty
(30) days after service is complete if this summons is not personally
delivered to you within the State of New York).  In case of your
failure to appear or answer, judgment will be taken against you by
default for the relief demanded in the complaint.

                    _____

            **NOTICE OF NATURE OF ACTION AND RELIEF SOUGHT**

        **THE OBJECT** of the above captioned action is to foreclose
Mortgages securing an obligation in the original principal amount
of $9,650,000.00 with interest thereon, recorded in the office of
the Westchester County Clerk on June 7, 2022, in Control No.

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM    INDEX NO. 69506/2022

NYSCEF DOC. NO. 1                                                    RECEIVED NYSCEF: 12/19/2022

621573791, covering premises known as 18 and 20 South Main Street and 21 and 25 East Broadway, in Port Chester, New York (Section 142.30, Block 2, and Lot 60 and 67) and in the office of the Suffolk County Clerk on August 8, 2022 in Liber 23445 Page 838, covering premises known as 96 Audobon Avenue, Bridgehampton, NY (Section 088.00, Block 02.00, Lot 027.00)

The relief sought in the within action is a final judgment directing the sale of the premises described above to satisfy the debt secured by the Mortgage described above.  The Plaintiff also seeks a deficiency judgment against the Defendants The Complex at Port Chester LLC, Jill Caridi and Michael Caridi for any debt secured by said Mortgage which is not satisfied by the proceeds of the sale of said premises.

TO the Defendants, except The Complex at Port Chester LLC, Jill Caridi and Michael Caridi:  The Plaintiff makes no personal claim against you in this action.  The claim for a deficiency judgment is made only against the Defendants The Complex at Port Chester LLC, Jill Caridi and Michael Caridi, and not against any other Defendants.

**THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.  THIS NOTICE IS REQUIRED BY THE PROVISIONS OF THE FAIR DEBT COLLECTIONS PRACTICES ACT AND DOES NOT IMPLY THAT WE ARE ATTEMPTING TO COLLECT MONEY FROM ANYONE WHO HAS DISCHARGED THE DEBT UNDER THE BANKRUPTCY LAWS OF THE UNITED STATES.**

Dated:   December 19, 2022

Lance Falow, Esq.
Attorney for Plaintiff
774 White Plains Road, suite 220
Scarsdale, NY 10583
914-713-0001

TO:

    The Complex at Port Chester LLC
    32 Cutler Road
    Greenwich, Ct. 06831

    Jill Caridi
    32 Cutler Road
    Greenwich, Ct. 06831

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM
INDEX NO. 69506/2022
NYSCEF DOC. NO. 1                                    RECEIVED NYSCEF: 12/19/2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-----------------------------------------X   Index No.


THE GALINN FUND LLC,

                        Plaintiff

            - against -                          **VERIFIED COMPLAINT**
                                                 **Commercial Mortgage**
                                                 **Foreclosure**

THE COMPLEX AT PORT CHESTER LLC,
JILL CARIDI, MICHAEL CARIDI,
and SAMAR CONSULTING, INC.,

                        Defendants
-----------------------------------------X

        The Plaintiff The Galinn Fund LLC, by its attorney, Lance
Falow, Esq., complains and alleges of the Defendants, upon
information and belief, as follows:

                AS AND FOR A FIRST CAUSE OF ACTION

        1.    The Plaintiff, The Galinn Fund LLC, at all times
hereinafter mentioned was and still is a New York limited liability
company duly organized and existing under the laws of New York, with
a principal place of business at 399 Knollwood Road, White Plains,
NY 10603.

        2.    The Defendant, The Complex at Port Chester LLC, at all
times hereinafter mentioned was and still is a New York limited
liability company duly organized and existing under the laws of New
York, with a principal place of business at 32 Cutler Road, Greenwich,
Ct. 06831.

        3.    The Defendant, Jill Caridi, at all times hereinafter
mentioned resided at and presently does reside at 32 Cutler Road,
Greenwich, Ct. 06831.

        4.    The Defendant, Michael Caridi, at all times
hereinafter mentioned resided at and presently does reside at 32
Cutler Road, Greenwich, Ct. 06831.

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM    INDEX NO. 69506/2022

NYSCEF DOC. NO. 1    RECEIVED NYSCEF: 12/19/2022

5.    The Defendants, The Complex at Port Chester LLC, Jill Caridi and Michael Caridi, are named as Defendants in this action because The Complex at Port Chester LLC, Jill Caridi and Michael Caridi are the maker, guarantors, and mortgagors under the Note and Mortgage and the owners of record of the premises which are the subject of this foreclosure action.

6.    On or about May 23, 2022, the Defendant The Complex at Port Chester LLC, for the purpose of securing the payment to The Galinn Fund LLC of the principal sum of $9,650,000.00, with interest thereon, for a valuable consideration, executed and delivered to The Galinn Fund LLC a Note (Exhibit 1) dated on that day (the "Note"), whereby said The Complex at Port Chester LLC, undertook and promised to pay to The Galinn Fund LLC, the aforesaid principal sum and interest thereon at the rate of 11.5%.   Defendants Jill Caridi and Michael Caridi individually guaranteed payment of the Note (Exhibit 2).

7.    As security for the payment of said indebtedness, said The Complex at Port Chester LLC, Jill Caridi and Michael Caridi duly executed, acknowledged and delivered to The Galinn Fund LLC, a Consolidated Mortgage (Exhibit 3), dated May 23, 2022 (the "Mortgage"), whereby The Complex at Port Chester LLC, Jill Caridi and Michael Caridi mortgaged to The Galinn Fund LLC the premises known as 18 and 20 South Main Street and 21 and 25 East Broadway, in Port Chester, New York (Section 142.30, Block 2, and Lot 60 and 67), and 96 Audobon Avenue in Bridgehampton, New York (Section 088.00, Block 02.00, Lot 027.00) described in said Mortgage, together with the appurtenances thereto and all fixtures and articles of personal property annexed to or used in connection with the mortgaged premises, as is more fully set forth in said Mortgage. The Mortgage consolidated prior mortgages and consolidation agreements; a schedule is attached as Exhibit 4 for the Port Chester property in Westchester County, and as Exhibit 5 for the Bridgehampton property in Suffolk County.

8.    Said Mortgage was duly recorded in the office of the Westchester County Clerk on June 7, 2022, in Control No. 621573791 and in the office of the Suffolk County Clerk on August 8, 2022 in Liber 23445 Page 838.   The mortgage recording tax thereon was duly paid.

9.    Said Mortgage provides that in case of default in the payment of any principal or interest that might become due thereon, or in case of a default in the compliance with the other terms, covenants or conditions of the Mortgage, the holder of the Mortgage

2

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM    INDEX NO. 69506/2022
NYSCEF DOC. NO. 1                                                RECEIVED NYSCEF: 12/19/2022

could declare the entire indebtedness secured by the Mortgage due
and payable and commence an action to foreclose the Mortgage pursuant
to applicable law.

10.   The Defendant The Complex at Port Chester LLC, has
failed to comply with the terms, covenants and conditions of said
Note and Mortgage by defaulting in the payment of the following
installments of principal and interest which became due under the
Note and Mortgage:   maturity payment due December 1, 2022 of
$9,650,000.00

11.   By reason of such default, the Plaintiff has duly
elected to declare the entire balance of the principal sum secured
by said Note and Mortgage to become immediately due and payable.

12.   There is now due and owing to the Plaintiff under said
Note and Mortgage the sum of Nine Million Six Hundred Fifty Thousand
Dollars ($9,650,000.00), with interest thereon, from December 1,
2022, at the rate of 11.5 percent per annum, late fees, and default
interest thereafter.

13.   In order to protect its security, the Plaintiff may
be compelled, during the pendency of this action, to pay sums for
premiums on insurance policies, real estate taxes, assessments,
water charges and sewer rents which are or may become liens on the
mortgaged premises, and other charges which may be necessary for the
protection of the mortgaged premises, and the Plaintiff prays that
any sum or sums so paid, together with interest from the date of
payment, shall be added to the Plaintiff's claim and be deemed secured
by said Note and Mortgage and adjudged a valid lien on the mortgaged
premises, and that the Plaintiff be paid such sums, together with
interest thereon, out of the proceeds of the sale of the mortgaged
premises.

14.   Defendant Samar Consulting, Inc. has a lien upon
the mortgaged premises or some part thereof, which interest or lien,
is subordinate to the mortgage being foreclosed.

15.   No other action or proceeding has been had at law
or otherwise for the recovery of said sum so secured by said Note
and Mortgage, or any part thereof.

16.   The Mortgage provides that, in the case of
foreclosure, the mortgaged premises may be sold in one parcel and
mortgagee is entitled to reasonable attorney fees.

17.   The mortgaged premises under foreclosure herein is
subject to any state of facts an accurate survey would show; and to

3

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM    INDEX NO. 69506/2022
NYSCEF DOC. NO. 1                                          RECEIVED NYSCEF: 12/19/2022

covenants, restrictions, reservations, easements and agreements of record, if any, and any violations thereof; and to building restrictions and zoning ordinances of the town or municipality in which said mortgaged premises are situate, if any, and any violations thereof; and to conditional bills of sale, security agreements and financing statements filed in connection with said mortgaged premises, if any, but only to the extent that any of the foregoing are not barred or foreclosed by this action; and to existing tenancies, if any, except tenants who are parties Defendant to this action; and to all unpaid real estate taxes, assessments, water charges and sewer rents, which are liens upon the premises but are not due or payable as of the time of the sale. In addition, the purchaser of the mortgaged premises at the foreclosure sale shall be required to pay all applicable local and State transfer taxes, deed stamps or other taxes due in connection with the transfer of the mortgaged premises.

18.    The Plaintiff shall not be deemed to have waived, altered, released or changed the election hereinbefore made by reason of the payment, after the date of the commencement of this action, of any or all of the defaults mentioned herein; and such election shall continue and remain effective until the costs and disbursements of this action, and all present and future defaults under the Note and Mortgage and occurring prior to the discontinuance of this action are fully paid.

19.    In the event the Plaintiff possesses any other liens against the mortgaged premises either by way of a junior Mortgage or otherwise, the Plaintiff requests that such other liens shall not be merged into the cause action set forth in this complaint, but that the Plaintiff shall be permitted to enforce said other liens and seek determination the priority thereof in any independent actions or proceedings including without limitation any surplus money proceeding.

## AS AND FOR A SECOND CAUSE OF ACTION

20.    The Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 19 above.

21.    The Defendants Jill Caridi and Michael Caridi, each individually guaranteed (Exhibit 2) the Note (Exhibit 1) and Mortgage (Exhibit 3).

22.    That Jill Caridi and Michael Caridi are fully liable for all amounts owed under the Note and Mortgage.

4

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM    INDEX NO. 69506/2022
NYSCEF DOC. NO. 1                                     RECEIVED NYSCEF: 12/19/2022

**WHEREFORE,** the Plaintiff demands judgment that the Defendants and all persons claiming under them or any of them, subsequent to the filing of the notice of pendency of this action, may be barred and foreclosed of all right, title, claim, lien and equity of redemption in the mortgaged premises; that said mortgaged premises may be decreed to be sold in one parcel according to law and subject to the items herein set forth; that the money arising from the sale may be brought into court; that the Plaintiff may be paid the amount of principal and interest due on said Note and Mortgage as hereinbefore set forth with interest to the time of such payment, and any sums paid by the Plaintiff for real estate taxes, assessments, water charges and sewer rents, insurance premium and other necessary charges or expenses to protect the lien of the Mortgage, and any sums expended for the protection or preservation of the property covered by said Mortgage, with interest, late fees, and default interest thereon from the time of default, and all other amounts due the Plaintiff under said Note and Mortgage, including reasonable attorney fees; and that the Defendants The Complex at Port Chester LLC, Jill Caridi and Michael Caridi may be adjudged to pay any deficiency which may remain, after applying all moneys received from the sale of the mortgaged premises, of the indebtedness secured by the Note and Mortgage or to be paid to the Plaintiff as costs or otherwise hereunder; and that the Plaintiff may have such other and further relief in the mortgaged premises as may be just and equitable.

Dated:   December 19, 2022

Lance Falow, Esq.
Attorney for Plaintiff
774 White Plains Road, suite 220
Scarsdale, NY 10583
914-713-0001

5

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM

NYSCEF DOC. NO. 1

INDEX NO. 69506/2022

RECEIVED NYSCEF: 12/19/2022

VERIFICATION

STATE OF NEW YORK, COUNTY OF WESTCHESTER, ss.

The undersigned  David Linn, being duly sworn, depose and say that the deponent is co-managing member of the Plaintiff in this action, the deponent has read the complaint, and the contents of the complaint are true to the deponent's own knowledge, except as to those matters which are alleged upon information and belief, and as to such matters the deponent believes them to be true.  The reason this verification is not made by the Plaintiff in person is that the Plaintiff The Galina Fund LLC is a limited liability company (LLC), and the deponent is thereof and the above information is from the books and records of the LLC.

David Linn

Subscribed and sworn to before me
on December 19, 2022.

Notary Public

ROBERT MILLER
NOTARY PUBLIC-STATE OF NEW YORK
No. 01MI6120888
Qualified in Westchester County
My Commission Expires 12-27-2024

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM

NYSCEF DOC. NO. 1

INDEX NO. 69506/2022

RECEIVED NYSCEF: 12/19/2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-----------------------------------------X   Index No.


THE GALINN FUND LLC,

                          Plaintiff

        - against -

THE COMPLEX AT PORT CHESTER LLC,
JILL CARIDI, MICHAEL CARIDI,
and SAMAR CONSULTING, INC.,

                          Defendants
-----------------------------------------X


============================================

**SUMMONS
AND
VERIFIED
COMPLAINT**

============================================


Lance Falow, Esq.
774 White Plains Road, suite 220
Scarsdale, NY 10583
914-713-0001

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM    INDEX NO. 69506/2022

NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 12/19/2022

EXHIBIT 1

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM       INDEX NO. 69506/2022
NYSCEF DOC. NO. 2                                          RECEIVED NYSCEF: 12/19/2022

## CONSOLIDATED MORTGAGE NOTE

$9,650,000.00                    White Plains, New York                    May 23, 2022

FOR VALUE RECEIVED, **THE COMPLEX AT PORT CHESTER, LLC**, a New York limited liability company, having an office and place of business located at 32 Cutler Road, Greenwich, Ct. 06832 (the "Maker"), promises to pay to the order of **THE GALINN FUND LLC**, a New York limited liability company having an office and place of business at 399 Knollwood Road, suite 318, White Plains, NY 10603 ("Payee"), or at such other place as may be designated in writing by the holder of this Note, the principal sum of NINE MILLION SIX HUNDRED  THOUSAND AND FIFTY THOUSAND AND 00/100 ($9,650,000.00) DOLLARS (the "Loan") plus all accrued interest and fees in lawful money of the United States of America, over the term of this Note ("Term") until December 1, 2022 (the **"Maturity Date"**). Commencing on July 1, 2022 and continuing on the 1st day of each month thereafter, Maker shall pay to Payee monthly payments of interest only thereon computed from the date hereof at the annual rate of eleven and a half (11.5%) percent, computed on the basis of 360 days per year and paid in arrears for the actual number of days elapsed (i.e. 365/360 accrual/year base). This Note consolidates and modifies all prior Notes and Allonges between Maker and Payee, including a Gap note in the sum of $1,250,000.00 executed this same day, which sum has been added to the prior principal balance of $8,400,000.00.

Such interest shall be paid, in arrears, on the first day of each calendar month during the term of this Note together with principal as set forth below. Notwithstanding the preceding sentence, interest for the period beginning on the date hereof through and including the last day of May, 2022 shall be paid upon the execution of this Note. Maker has this date

1

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM    INDEX NO. 69506/2022

NYSCEF DOC. NO. 2                                                    RECEIVED NYSCEF: 12/19/2022

posted an interest reserve for interest payments due July 1, 2022, August 1, 2022, September 1, 2022, and December 1 , 2022, in the sum of $370,000.00

All unpaid principal, interest and other amounts outstanding shall be due and payable to Payee on the Maturity Date.    Maker shall pay an exit fee of 2.5% of principal ($241,250.00) upon payoff of the note.  In the event the loan is satisfied on or before Sept. 23, 2022, the exit fee shall be waived.

Without prejudice to any other provision herein, it is agreed that in the event any payment agreed to be made hereunder is not received by the Holder within five (5) days of the due date specified herein, a "late charge" of five (5%) Percent on amounts overdue may be charged by the Holder hereof for the purpose of defraying the expenses incident to handling such delinquent payments. Such "late charge", if not previously paid, shall be added to and become a part of the next succeeding monthly payment to be made hereunder.

The Maker may prepay the indebtedness evidenced by this Note in whole or in party at any time during the applicable term of this Note without penalty.

Any permitted partial prepayment shall be applied to the installments of principal last due under this Note and shall not release Maker from the obligation to pay the installments of interest and/or principal next becoming due under this Note. Any permitted partial prepayments may be made in multiples satisfactory to Payee.  In addition, all prepayments may be made only upon payment of all interest accrued and unpaid on the principal balance of this Note to and including the date of prepayment and all other sums due under this Note and the Mortgage secured thereby. In the event the Maturity Date of the Loan is accelerated following an Event of Default as set forth in the loan documents, any payment of the amount necessary to satisfy the entire indebtedness made after such Event of Default shall be expressly deemed a

2

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM    INDEX NO. 69506/2022
NYSCEF DOC. NO. 2                                           RECEIVED NYSCEF: 12/19/2022

voluntary payment. In such case, to the extent permitted by law, the Payee shall be entitled to the amount necessary to satisfy the entire indebtedness plus the appropriate prepayment premium set forth above.

During the term of this Note, the Maker shall deliver to the Payee on an annual basis signed copies of its tax returns (both State and Federal and including K-1's and other schedules attached thereto) within thirty (30) days of filing. In addition, the Maker shall cause 392 Davis Avenue Associates, LLC, Michael Caridi, Majic Realty LLC, Majic Development Group, LLC, (collectively the "Guarantors") to deliver to the Payee on an annual basis signed copies of their tax returns (both State and Federal and including K-1's and other schedules attached thereto) within thirty (30) days of filing. The Maker and the Guarantors shall also deliver copies of their annual statements of personal and business financial condition on an annual basis within one hundred twenty (120) days of calendar year end. Maker shall also deliver to Payee on an annual basis, verification of liquid assets and contingent liabilities of Maker and Guarantors in sufficient detail to reasonably satisfy the Payee. Maker shall submit to Payee on an annual basis, a current, complete rent roll and detailed income and expense statement for the Mortgaged Premises and copies of all new and or modified and executed lease agreements at the Mortgaged Premises. Maker and Guarantors shall deliver to Payee upon request, such other financial reports, schedules, and business information of the Maker and Guarantors as the Payee may reasonably require. All such financial statements shall be in form and content reasonably acceptable to the Payee. In the event Maker does not make all reasonable attempts to comply with any or all of the financial information reporting requirements set forth herein, in addition to any other remedy which the Payee may possess in connection with Maker's failure to comply with said reporting requirements, the Payee may impose a charge of $50.00 dollars per day upon

3

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM    INDEX NO. 69506/2022
NYSCEF DOC. NO. 2                                          RECEIVED NYSCEF: 12/19/2022

Maker which charge shall commence ten (10) days after notice to Maker that Maker is in default with respect to Maker's obligations to supply said financial reporting information to Payee.

IT IS HEREBY EXPRESSLY AGREED, that the said principal sum with interest thereon, evidenced by this Note shall become due at the option of the Holder hereof on the happening of any Event of Default by which, under the terms of the mortgage securing this Note, said principal sum may or shall become due and payable; also that all of the covenants, conditions and agreements contained in said mortgage are hereby made part of this instrument. Any principal or monies advanced under this Note which shall not be paid when due, whether maturing by lapse of time, or by reason of acceleration under the provisions herein stated, shall bear interest at a rate of twenty-four (24%) percent in excess of the then applicable rate ("**Default Rate**").

Presentment for payment, notice of dishonor, protest and notice of protest are hereby waived. The Maker, endorsers, and guarantors hereof and all others who may become liable for all or any part of this obligation consent to any number of renewals or extension of the time of payment hereof. Any such renewals or extensions may be made without notice to any of said parties and without affecting their liability.

In the event it shall become necessary for the holder hereof to employ counsel to collect this Note or to protect or foreclose the security given for this Note, the Maker also agrees to pay to the holder hereof a reasonable attorney's fee for the services of such counsel, whether or not suit be brought.

Anything herein to the contrary notwithstanding, if from any circumstances whatever fulfillment of any provision of this Note at the time performance of said provision shall be due shall involve transcending the limit of validity prescribed by the usury statutes of the

4

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM

NYSCEF DOC. NO. 2

INDEX NO. 69506/2022

RECEIVED NYSCEF: 12/19/2022

State of New York or any other law of the State of New York, then ipso facto the obligation to be fulfilled shall be reduced to the limit of such validity so that in no event shall exaction be possible under this Note in excess of the limit of such validity.

This Note may not be changed orally, but only by an agreement in writing and signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

This instrument shall be governed by and construed in accordance with the laws of the State of New York.

The Complex at Port Chester, LLC

By: _____
Name: Michael Caridi
Title: Managing Member

STATE OF NEW YORK        )
                         ) ss:
COUNTY OF WESTCHESTER    )

On the 12 day of May in the year 2022 before me, the undersigned, a Notary Public in and for said State, personally appeared Michael Caridi personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the person upon behalf of which the individual acted, executed the instrument.

Joseph Rabadi
Notary Public, State of New York
No. 01RA6334580
Qualified in Westchester County
Commission Expires December 21, 2023

Notary Public

5

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM    INDEX NO. 69506/2022

NYSCEF DOC. NO. 3    RECEIVED NYSCEF: 12/19/2022

EXHIBIT 2

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM     INDEX NO. 69506/2022

NYSCEF DOC. NO. 3                                                                RECEIVED NYSCEF: 12/19/2022

## GUARANTY OF PAYMENT: MICHAEL CARIDI

IN CONSIDERATION of the sum of $1.00 cash in hand paid, and other valuable consideration, as well as for the purpose of seeking to induce **The Galinn Fund, LLC** a limited liability company organized and existing under and by virtue of the laws of the State of New York whose address is 399 Knollwood Road, White Plains, New York 10603, (hereinafter called "Lender") to extend credit to

### The Complex at Port Chester, LLC.

(hereinafter called the "Principal"), the undersigned (hereinafter referred to as the "Guarantor") does hereby guarantee to said Lender and to its endorsees, transferees, successors or assigns of either this Guaranty or any of the obligations secured hereunder, or both, the prompt payment and not merely collection of principal and interest of that certain Consolidated Mortgage Note (hereinafter the "Note") in the principal sum of $9,650,000,000.00 dated the date hereof, executed by Principal and payable to Lender, including any renewals, modifications or extensions thereof and all other sums payable by the Principal under said Note and the Mortgage securing said Note (the "Mortgage"; with the Note, collectively, the "Obligations"), and does hereby agree that if the Obligations are not paid when due, the Guarantor will immediately pay the same.

The obligations of the Guarantor hereunder are joint and several, absolute, unconditional and irrevocable under any and all circumstances, irrespective of the validity or enforceability of the Obligations, any actions taken or not taken by the Lender and any other circumstance which might constitute an equitable or legal discharge of the Principal for the Obligations or of the Guarantor under this Guaranty in bankruptcy or in any other instance, it being the purpose and intent of the Guarantor that his obligations hereunder shall be absolute and unconditional under any and all circumstances.

The Obligations covered by this Guaranty include the obligations of Principal under the Note and the Mortgage, either now existing, or hereafter coming into existence, and any renewals or extensions, in whole or in part.

The Guarantor hereby consents and agrees that Guarantor shall deliver to the Lender on an annual basis the following:

        (a)    signed copies of tax returns (both State and Federal and including all schedules attached thereto) within thirty (30) days of filing;

        (b)    copies of annual statements of personal and business financial condition within one hundred twenty (120) days of calendar year end;

        (c)    verification of liquid assets and contingent liabilities in sufficient detail to reasonably satisfy the Lender in its sole and absolute discretion; and

        (d)    any other information of Guarantor as reasonably requested and/or required by Lender.

In the event Guarantor does not make all reasonable attempts to comply with any or all of the financial information reporting requirements set forth herein, in addition to any other remedy which the Lender may possess in connection with Guarantor's failure to comply with said reporting

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM    INDEX NO. 69506/2022

NYSCEF DOC. NO. 3                                                    RECEIVED NYSCEF: 12/19/2022

requirements, the Lender may impose a charge of $250.00 dollars per month upon Guarantor which charge shall commence ten (10) days after notice to Guarantor that Guarantor is in default with respect to Guarantor's obligations to supply said financial reporting information to Lender.

The Guarantor hereby consents and agrees that Lender may at any time, either with or without consideration and without notice to the Guarantor, surrender any property or other security of any kind or nature whatsoever held by it or by any person, firm or corporation on its behalf, or for its account securing any Obligations, or substitute for any collateral so held by it, other collateral of like kind, or of any kind, or modify the terms of the Note and/or the Mortgagee, without notice to or further consent from the Guarantor, and such surrender, substitution or modification shall not in any way affect the liability of the Guarantor hereunder.

The Guarantor hereby consents and agrees that Lender may at any time, either with or without consideration, release any of the other obligors or guarantor of the Obligations without notice to or further consent from the Guarantor, and such release shall not in any way affect the liability of the Guarantor hereunder.

THIS AGREEMENT IS A GUARANTY OF PAYMENT. LENDER SHALL HAVE THE RIGHT TO PROCEED AGAINST THE GUARANTOR WHETHER OR NOT THE LENDER COMMENCES AN ACTION AGAINST THE PRINCIPAL TO COLLECT THE LOAN EVIDENCED BY THE NOTE.

The Guarantor hereby agrees that extensions of time in respect of any Obligations may be granted by Lender to the Principal and that the Obligations and/or the Note and/or the Mortgage may be modified in any other respect, all without notice to the Guarantor and without thereby affecting the liability of the Guarantor under this Guaranty in any respect; the Guarantor waives notice of acceptance of this Guaranty by Lender, or of the extension, modification or renewal of any obligation of the Principal to which relates, or of any default by the Principal. The Guarantor agrees that no act or omission on the part of Lender shall in any way affect or impair this Guaranty.

This Guaranty is made subject to all the terms, conditions, agreements or stipulations contained in the Note evidencing the obligations hereby guaranteed and the Guarantor further agrees that the terms, conditions and stipulations of any notes which may be executed by the Principal to evidence obligations incurred in the future shall simultaneously with the execution of such notes become a part of this Guaranty if such notes are related to or in substitution of the Note; said Guarantor hereby ratifying and confirming the agreement contained in the Note, with respect to the effect of said agreements, both as to Guarantor and as to any and all collateral in the possession of said Lender, or which may hereafter, during the life of this Guaranty, come into its possession securing any obligations covered by this Guaranty.

Guarantor hereunder shall be fully obligated for all of the Obligations guaranteed hereby fully and to the same extent as if Guarantor were the maker and endorser of such Obligations.

If any payment by Principal to Lender held to be a preference in any bankruptcy proceedings or if for any other reason Lender is required to refund any payment made by the Principal, such payment shall not constitute a release of the Guarantor as to such monies.

Case 7:22-cv-10791-KMK    Document 8-1    Filed 01/30/23    Page 19 of 82

In the event it becomes necessary for Lender to enforce this Guaranty by legal action, Guarantor hereby waives the right to be sued in the county of said Guarantor's residence; and if this Guaranty is placed in the hands of an attorney at law for enforcement, Guarantor hereby agrees to pay the reasonable costs thereof, and a reasonable sum as an attorney's fee for such enforcement. Anything in this Guaranty to the contrary notwithstanding, if from any circumstances whatever fulfillment of any provision shall be due shall involve transcending the limit of validity prescribed by the usury statutes of the State of New York or any other law of the State of New York, then *ipso facto* the obligations to be fulfilled shall be reduced to the limit of such validity so that in no event shall exaction be possible under this Guaranty in excess of the limit of such validity.

The Guarantor agrees that this Guaranty shall inure to the benefit of and may be enforced by Lender, or its endorsees, transferees, successors and assigns, and shall be binding upon and enforceable against the Guarantor and Guarantor's legal representatives, heirs, successors and/or assigns.

This Guaranty shall be construed and enforced in accordance with the laws of the State of New York.

IN WITNESS WHEREOF, the Guarantor has hereunto executed this Guaranty this **23 day of May, 2022**.

By: _____
    Michael Caridi

STATE OF NEW YORK      )
                           ) ss.:
COUNTY OF WESTCHESTER  )

On the ____ **day of May, in the year 2022** before me, the undersigned, a Notary Public in and for said State, personally appeared **Michael Caridi** personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity and that by her signature on the instrument, the persons upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM
NYSCEF DOC. NO. 3

INDEX NO. 69506/2022
RECEIVED NYSCEF: 12/19/2022

## GUARANTY OF PAYMENT: JILL CARIDI a/k/a JILL J. CARIDI

        IN CONSIDERATION of the sum of $1.00 cash in hand paid, and other valuable consideration, as well as for the purpose of seeking to induce **The Galinn Fund, LLC** a limited liability company organized and existing under and by virtue of the laws of the State of New York whose address is 399 Knollwood Road, White Plains, New York 10603, (hereinafter called "Lender") to extend credit to

### The Complex at Port Chester, LLC.

(hereinafter called the "Principal"), the undersigned (hereinafter referred to as the "Guarantor") does hereby guarantee to said Lender and to its endorsees, transferees, successors or assigns of either this Guaranty or any of the obligations secured hereunder, or both, the prompt payment and not merely collection of principal and interest of that certain Consolidated Mortgage Note (hereinafter the "Note") in the principal sum of $9,650,000.00 dated the date hereof, executed by Principal and payable to Lender, including any renewals, modifications or extensions thereof and all other sums payable by the Principal under said Note and the Mortgage securing said Note (the "Mortgage"; with the Note, collectively, the "Obligations"), and does hereby agree that if the Obligations are not paid when due, the Guarantor will immediately pay the same.

        The obligations of the Guarantor hereunder are joint and several, absolute, unconditional and irrevocable under any and all circumstances, irrespective of the validity or enforceability of the Obligations, any actions taken or not taken by the Lender and any other circumstance which might constitute an equitable or legal discharge of the Principal for the Obligations or of the Guarantor under this Guaranty in bankruptcy or in any other instance, it being the purpose and intent of the Guarantor that his obligations hereunder shall be absolute and unconditional under any and all circumstances.

        The Obligations covered by this Guaranty include the obligations of Principal under the Note and the Mortgage, either now existing, or hereafter coming into existence, and any renewals or extensions, in whole or in part.

        The Guarantor hereby consents and agrees that Guarantor shall deliver to the Lender on an annual basis the following:
                (a)    signed copies of tax returns (both State and Federal and including all schedules attached thereto) within thirty (30) days of filing;
                (b)    copies of annual statements of personal and business financial condition within one hundred twenty (120) days of calendar year end;
                (c)    verification of liquid assets and contingent liabilities in sufficient detail to reasonably satisfy the Lender in its sole and absolute discretion; and
                (d)    any other information of Guarantor as reasonably requested and/or required by Lender.

In the event Guarantor does not make all reasonable attempts to comply with any or all of the financial information reporting requirements set forth herein, in addition to any other remedy which the Lender may possess in connection with Guarantor's failure to comply with said reporting

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM
INDEX NO. 69506/2022
NYSCEF DOC. NO. 3
RECEIVED NYSCEF: 12/19/2022

requirements, the Lender may impose a charge of $250.00 dollars per month upon Guarantor which charge shall commence ten (10) days after notice to Guarantor that Guarantor is in default with respect to Guarantor's obligations to supply said financial reporting information to Lender.

The Guarantor hereby consents and agrees that Lender may at any time, either with or without consideration and without notice to the Guarantor, surrender any property or other security of any kind or nature whatsoever held by it or by any person, firm or corporation on its behalf, or for its account securing any Obligations, or substitute for any collateral so held by it, other collateral of like kind, or of any kind, or modify the terms of the Note and/or the Mortgagee, without notice to or further consent from the Guarantor, and such surrender, substitution or modification shall not in any way affect the liability of the Guarantor hereunder.

The Guarantor hereby consents and agrees that Lender may at any time, either with or without consideration, release any of the other obligors or guarantor of the Obligations without notice to or further consent from the Guarantor, and such release shall not in any way affect the liability of the Guarantor hereunder.

THIS AGREEMENT IS A GUARANTY OF PAYMENT. LENDER SHALL HAVE THE RIGHT TO PROCEED AGAINST THE GUARANTOR WHETHER OR NOT THE LENDER COMMENCES AN ACTION AGAINST THE PRINCIPAL TO COLLECT THE LOAN EVIDENCED BY THE NOTE.

The Guarantor hereby agrees that extensions of time in respect of any Obligations may be granted by Lender to the Principal and that the Obligations and/or the Note and/or the Mortgage may be modified in any other respect, all without notice to the Guarantor and without thereby affecting the liability of the Guarantor under this Guaranty in any respect; the Guarantor waives notice of acceptance of this Guaranty by Lender, or of the extension, modification or renewal of any obligation of the Principal to which relates, or of any default by the Principal. The Guarantor agrees that no act or omission on the part of Lender shall in any way affect or impair this Guaranty.

This Guaranty is made subject to all the terms, conditions, agreements or stipulations contained in the Note evidencing the obligations hereby guaranteed and the Guarantor further agrees that the terms, conditions and stipulations of any notes which may be executed by the Principal to evidence obligations incurred in the future shall simultaneously with the execution of such notes become a part of this Guaranty if such notes are related to or in substitution of the Note; said Guarantor hereby ratifying and confirming the agreement contained in the Note, with respect to the effect of said agreements, both as to Guarantor and as to any and all collateral in the possession of said Lender, or which may hereafter, during the life of this Guaranty, come into its possession securing any obligations covered by this Guaranty.

Guarantor hereunder shall be fully obligated for all of the Obligations guaranteed hereby fully and to the same extent as if Guarantor were the maker and endorser of such Obligations.

If any payment by Principal to Lender held to be a preference in any bankruptcy proceedings or if for any other reason Lender is required to refund any payment made by the Principal, such payment shall not constitute a release of the Guarantor as to such monies.

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM    INDEX NO. 69506/2022
NYSCEF DOC. NO. 3                                              RECEIVED NYSCEF: 12/19/2022

In the event it becomes necessary for Lender to enforce this Guaranty by legal action, Guarantor hereby waives the right to be sued in the county of said Guarantor's residence; and if this Guaranty is placed in the hands of an attorney at law for enforcement, Guarantor hereby agrees to pay the reasonable costs thereof, and a reasonable sum as an attorney's fee for such enforcement. Anything in this Guaranty to the contrary notwithstanding, if from any circumstances whatever fulfillment of any provision shall be due shall involve transcending the limit of validity prescribed by the usury statutes of the State of New York or any other law of the State of New York, then *ipso facto* the obligations to be fulfilled shall be reduced to the limit of such validity so that in no event shall exaction be possible under this Guaranty in excess of the limit of such validity.

The Guarantor agrees that this Guaranty shall inure to the benefit of and may be enforced by Lender, or its endorsees, transferees, successors and assigns, and shall be binding upon and enforceable against the Guarantor and Guarantor's legal representatives, heirs, successors and/or assigns.

This Guaranty shall be construed and enforced in accordance with the laws of the State of New York.

IN WITNESS WHEREOF, the Guarantor has hereunto executed this Guaranty this day of May, 2022

By: _____
    Jill Caridi a/k/a Jill J. Caridi

STATE OF NEW YORK       )
                        ) ss.:
COUNTY OF WESTCHESTER   )

On the 24 day of May, in the year 2022 before me, the undersigned, a Notary Public in and for said State, personally appeared Jill Caridi personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity and that by her signature on the instrument, the persons upon behalf of which the individual acted, executed the instrument.

Joseph Rabadi
Notary Public, State of New York
No. 01RA6334580
Qualified in Westchester County
Commission Expires December 21, 2023

Notary Public _____

3

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM    INDEX NO. 69506/2022

NYSCEF DOC. NO. 4    RECEIVED NYSCEF: 12/19/2022

EXHIBIT 3

## *CONSOLIDATED MORTGAGE*

THIS AGREEMENT made on the   23   day of May, 2022, between **The Complex at Port Chester LLC.**, a New York limited liability company  having an address and place of business at 32 Cutler Road, Greenwich, Ct. 06832, Jill Caridi and Michael Caridi, 32 Cutler Road, Greenwich, Ct. 06832      (hereinafter called **"Mortgagor"**) and **The Galinn Fund, LLC, a New York limited liability company and place of business at 399 Knollwood Road, suite 318, White Plains, NY 10603**, (hereinafter called **"Mortgagee"**);

## W I T N E S S E T H:

That to secure the payment of an indebtedness in the principal sum of NINE MILLION SIX HUNDRED THOUSAND AND 00/100 ($9,650,000.00) DOLLARS, lawful money of the United States, or so much thereof as may be advanced, to be paid with interest thereon according to a certain Consolidated Mortgage Note bearing even date herewith made by Mortgagor to the order of Mortgagee (hereinafter referred to as the "Mortgage Note" or "Note"), Mortgagor hereby mortgages and by these presents does mortgage unto Mortgagee all right, title and interest in and to each of the parcels described in Schedule A, attached hereto and made a part hereof and incorporated herein by reference as if fully set out herein. This Consolidated Mortgage consolidates a Gap Mortgage in the sum of $1,250,000.00 made this same date and a Mortgage dated August 9, 2022 in the principal sum of $8,400,000.00.

TOGETHER WITH all buildings, structures and improvements thereon situate or which may hereafter be erected or placed thereon and all and singular the tenements, hereditament, appurtenances and easements thereunto belonging or in anywise appertaining, and the rents, issues and profits thereof.

The above described realty and collateral referred to under Section 13.12 hereof are herein referred to collectively as the "Mortgaged Premises":

TO HAVE AND TO HOLD the Mortgaged Premises unto the Mortgagee, its successors and assigns forever.  PROVIDED ALWAYS, and these presents are on this express condition, that if the Mortgagor shall well and truly pay said indebtedness unto the said Mortgagee, and any renewals or extensions thereof, and the interest thereon, including any reasonable attorney's fee, which the said Mortgagee may incur or be put to in collecting the same by foreclosure, or otherwise, and shall perform and comply with all other terms, conditions and covenants contained herein, then these presents and the estate hereby granted shall cease, determine and be null and void

AND at all times until the entire principal indebtedness of the Mortgage Note, including all sums now or hereafter due Mortgagee under the terms hereof, is fully paid, together with all interest thereon, Mortgagor and Mortgagee further covenant, declare and agree as follows:

1

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM     INDEX NO. 69506/2022

NYSCEF DOC. NO. 4                                                    RECEIVED NYSCEF: 12/19/2022

## ARTICLE I

### Covenant as to Title

Section 1.01. Mortgagor hereby covenants with Mortgagee that Mortgagor is seized of an indefeasible estate in fee simple in the Mortgaged Premises and Mortgagor will warrant and forever defend title to the same unto Mortgagee against all lawful claims whatsoever.

## ARTICLE II

### Payment of Taxes, Assessments, Etc.

Section 2.01. In the event of default by Mortgagor, Mortgagor, at the option of Mortgagee, in addition to the monthly payments of interest as provided in the Note, shall also make monthly tax escrow payments in an amount equal to 1/12 of the estimated annual real estate taxes assessed against the Mortgaged Premises encumbered by this Mortgage securing the debt evidenced hereby. The monthly tax escrow payments shall be held in a non-interest bearing account and the amount of the monthly payments may be adjusted from time to time to insure that the holder has sufficient funds to pay the real estate taxes thirty (30) days prior to their due date.

Section 2.02. Mortgagor shall pay (except as hereinafter provided in Section 2.04 hereof) before any fine, penalty, interest or cost may be added thereto, or become due or be imposed by operation of law for the nonpayment thereof, all taxes, assessments, water and sewer rents, rates and charges, transit taxes, county taxes, charges for public utilities, excises, levies, vault and all other license and permit fees and other governmental charges, general and special, ordinary and extraordinary, unforeseen and foreseen, of any kind and nature whatsoever which at any time prior to or during the term of this Mortgage may be assessed, levied, confirmed, imposed upon, or grow or become due and payable out of or in respect of, or become a lien on, the Mortgaged Premises or any part thereof or any appurtenance thereto, prior to the lien created by this Mortgage (all such taxes, assessments, water and sewer rents, rates and charges, transit taxes, county taxes, charges for public utilities, excises, levies, vault and all other license and permit fees and other governmental charges being hereinafter referred to as "Impositions", and any of the same being hereinafter referred to as an "Imposition"); provided, however, that if, by law, any Imposition may at the option of the taxpayer be paid in installments (whether or not interest shall accrue on the unpaid balance of such Imposition), Mortgagor may exercise the option to pay the same (and any accrued interest on the unpaid balance of such Imposition) in installments and, in such event, shall pay such installments as the same respectively become due and before any fine, penalty, further interest or cost may be added thereto.

Section 2.03. Mortgagor, upon request of Mortgagee, will furnish to Mortgagee within thirty (30) days after the date when any Imposition would become delinquent, official receipts of the appropriate taxing authority, or other evidence reasonably satisfactory to Mortgagee evidencing the payment thereof.

2

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM
INDEX NO. 69506/2022
NYSCEF DOC. NO. 4
RECEIVED NYSCEF: 12/19/2022

Section 2.04. Mortgagor shall have the right to contest the amount or the validity, in whole or in part, of any Imposition by appropriate proceedings diligently conducted in good faith, and notwithstanding the provisions of Section 2.02 or Section 2.03 of this Article II, Mortgagor may postpone or defer payment of such Imposition, if Mortgagor, on or before the due date thereof, shall (i) deposit or cause to be deposited with Mortgagee a surety bond issued by a surety company of recognized responsibility reasonably acceptable to Mortgagee conditioned upon and securing the payment of the same, plus all fines, interest, penalties or costs which may become due pending the determination of such contest, or (ii) deposit or cause to be deposited with Mortgagee an amount equal to one hundred ten (110%) per cent of such Imposition or any balance thereof remaining unpaid, and from time to time but not more frequently than annually deposit additional amounts in order to keep on deposit at all such times an amount equal to one hundred ten (110%) per cent of the Imposition remaining unpaid and all interest, penalties, costs and charges accrued or accumulated thereon, or (iii) furnish or cause to be furnished to Mortgagee other security reasonably satisfactory to Mortgagee. If any such deposit is made or such security furnished and Mortgagor continues in good faith to contest the validity of such Imposition by appropriate legal proceedings which shall operate to prevent the collection of such Imposition so contested and the sale of the Mortgaged Premises or any part thereof to satisfy the same, Mortgagor shall be under no obligation to pay such Imposition until such time as it has been finally determined to be a valid lien on the Mortgaged Premises. Mortgagee shall have the full power and authority to apply or require the application of any amount so deposited to payment of any unpaid Imposition to prevent the sale or forfeiture of the Mortgaged Premises for nonpayment thereof without liability, however, for any failure so to apply any amount so deposited unless Mortgagor or the person making such deposit in writing requests the application of such amount to the payment of the particular Imposition with reference to which it was deposited. Any surplus remaining in the hands of Mortgagee after the Imposition for which the deposit was made has been paid in full shall be repaid to Mortgagor or the person making such deposit unless Mortgagor shall be in default in the payment of any monies or other charges required to be made under the provisions of this Mortgage and in case of such default so much of such surplus shall be applied on account of such unpaid monies or other charges as shall be required to cure such default, and the remainder of such surplus, if any, shall be repaid to Mortgagor or the person making such deposit.

Upon the termination of any such proceedings, Mortgagor shall pay the amount of such Imposition or part thereof as finally determined in such proceedings, the payment of which shall have been deferred during the prosecution of such proceedings, together with any costs, fees, interest, penalties or other liabilities in connection therewith, however, if monies have been deposited with the Mortgagee pursuant to this Section, said funds shall be used to make payment and the balance remaining of the funds deposited pursuant to this Section, if any, shall be returned to Mortgagor.

Section 2.05. The certificate, advice or bill of the appropriate official designated by law to make or issue the same or to receive payment of any Imposition, of nonpayment of such Imposition shall be prima facie evidence that such Imposition is due and unpaid at the time of the making or issuance of such certificate, advice or bill.

3

Case 7:22-cv-10781-KMK    Document 8-1    Filed 01/30/23    Page 27 of 82    INDEX NO. 69506/2022

Section 2.06. If Mortgagor shall fail to pay any Imposition or Impositions in accordance with the provisions of this Article II, and there are insufficient funds available in the tax escrow account, Mortgagee may at its option, but shall be under no obligation to do so, pay such Imposition or Impositions, and Mortgagor will repay to Mortgagee on demand any amount so paid by Mortgagee, with interest thereon at a rate of five (5%) per cent in excess of the rate charged on the unpaid principal balance from the date of such advance to the day of repayment and the same shall be secured by this Mortgage.

ARTICLE III

Insurance

Section 3.01. Mortgagor at its sole cost and expense, shall keep the mortgaged personal property and the Building insured during the term of this Mortgage, against loss or damage by fire and against loss or damage by other risks now or hereafter embraced by "Extended Coverage", so called, in an amount not less than 100% of the "full replacement cost" and which policies shall contain a stated value endorsement so that 80% co-insurance provisions shall be applicable to any losses. As used herein, "full replacement cost" shall mean (i) with reference to the Building, the cost of replacing the Building, exclusive of the cost of excavations, foundations and footings below the lowest basement floor, without depreciation of the Building, and (ii) with reference to the mortgaged personal property the cost of replacing said property. Said full replacement cost shall be determined from time to time at the request of the Mortgagee by an insurer or by an appraiser, engineer, architect or contractor designated by Mortgagor and approved by Mortgagee (such approval not to be unreasonably withheld) and paid by Mortgagor. No omission on the part of Mortgagee to request any such determination shall relieve Mortgagor of any of its obligations under this Article III.

Section 3.02. Mortgagor, at its sole cost and expense, shall maintain:
(a) personal injury and property damage liability insurance against claims for bodily injury, death or property damage, occurring on, in or about the Mortgaged Premises or the elevators or escalators, if any, therein and on, in or about the adjoining streets, property and passageways, such insurance to afford minimum protection, during the term of this Mortgage, of not less than $1,000,000.00 in respect of bodily injury or death for any one person, and of not less than $2,000,000.00 in respect of any one accident, and of not less than the full replacement value of the improvements for property damage;

(b) boiler insurance, if generally available, provided any of the Building contain a boiler, and, if applicable, insurance against loss or damage from leakage of sprinkler systems in such amounts as Mortgagee shall from time to time reasonably require;

(c) if Mortgagor leases any of the Mortgaged Premises, rent insurance in an amount not less than one year's gross minimum rentals from the leases. Mortgagor shall assign to Mortgagee the proceeds of such insurance to be held by Mortgagee as security for the payment of the indebtedness as herein provided and for payment of

4

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM          INDEX NO. 69506/2022

NYSCEF DOC. NO. 4                                                        RECEIVED NYSCEF: 12/19/2022

any operating expense shortfall until such time as the Mortgaged Premises shall have been restored and placed in full operation, at which time, provided Mortgagor is not then in default hereunder (or after the curing of any such default), such deposit shall be returned by Mortgagee to Mortgagor or Mortgagor's designee;

(d) when required by Mortgagee, war risk insurance upon the Building as and when such insurance is obtainable from the United States of America or any agency or instrumentality thereof, in an amount equal to the lesser of "full replacement cost" thereof or the maximum amount of insurance obtainable;

(e) when required by Mortgagee, such other insurance in such amounts as may from time reasonably be required by Mortgagee against other insurable hazards including but not limited to nuclear reaction and radioactive contamination which at the time are commonly insured against and generally available in the case of premises similarly situated, due regard being or to be given, to the height and type of building, its construction, use and occupancy.

(f) when required by any applicable law or regulation, flood insurance on the Building in an amount equal to the lesser of the "full replacement cost" thereof or the maximum amount of insurance available.

Section 3.03. Mortgagor may effect for its own account any insurance not required under the provisions of this Mortgage but any insurance effected by Mortgagor on the Building whether or not required under this Article III, shall be for the mutual benefit of Mortgagor and Mortgagee as their interest may appear and shall be subject to all other provisions of this Article III and of Article X hereof.

Section 3.04. Except as hereinafter otherwise provided, all insurance provided for in this Article III shall be effected under valid and enforceable policies issued by financially responsible insurers having a "A-" or higher rating under Alfred M. Best Company, Inc. and a financial size category of not less than IX and incorporated under the laws of the United States or any state thereof and authorized to do business in the State of New York and which are approved in writing by Mortgagee, such approval not to be unreasonably withheld, if obtainable from such insurers, and if not obtainable from such insurers, then from such other insurers as Mortgagee may approve in writing, such approval not to be unreasonably withheld. It is further agreed that the aggregate amount of coverage underwritten by any insurer in conformance with the provisions of this Mortgage shall not exceed 10% of that insurer's surplus to policyholder. Except as hereinafter otherwise provided, all policies shall contain the New York standard non-contributory mortgagee clause in favor of Mortgagee. Notwithstanding the foregoing provisions of this Section, (i) war risk insurance will be acceptable to Mortgagee if written by the United States of America or any agency or instrumentality thereof, and (ii) injury and property damage liability insurance in excess of the minimum limits required under the provisions of Clause (a) of Section 3.02 hereof may be written by any insurers approved by Mortgagee, such approval not to be unreasonably withheld and (iii) personal injury and property damage liability insurance policies and insurance policies covering the mortgaged personal property need not contain mortgagee clauses in favor of any mortgagee, but

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM    INDEX NO. 69506/2022
NYSCEF DOC. NO. 4                                        RECEIVED NYSCEF: 12/19/2022

insurance policies on the mortgaged personal property must provide for payment of loss to Mortgagee as provided in Clause (ii) of Section 3.05 hereof. Upon the execution of this Mortgage and thereafter not less than thirty (30) days prior to the expiration dates of the expiring policies theretofore furnished pursuant to this Article III, or any other Article of this Mortgage, originals of the policies bearing notations evidencing the payment of premiums or accompanied by other evidence satisfactory to Mortgagee of such payment, shall be delivered by Mortgagor to Mortgagee. If any of the insurance required hereunder is provided by Mortgagor under a blanket insurance policy, Mortgagee will accept, in lieu of the original policies required, copies of said original policies with original certificates to evidence that the Mortgaged Premises are covered thereby and specifying the amounts of such coverage.

Section 3.05. All policies of insurance provided for in Section 3.01 hereof and in Clauses (b), (c), (d), (e) and (f) of Section 3.02 hereof shall include the interest of Mortgagee. The loss, if any, under any policies provided for in such Section 3.01 hereof and Clauses (b), (c), (d), (e) and (f) of Section 3.02 hereof shall be adjusted with the insurance companies (i) by Mortgagor in the case of any particular casualty resulting in damage or destruction not exceeding $50,000.00 in the aggregate, or (ii) by Mortgagor and Mortgagee in the case of any particular casualty resulting in damage or destruction exceeding $50,000.00 in the aggregate. The proceeds of any such insurance shall be payable:

(i) to Mortgagor in the case of any particular casualty resulting in damage or destruction not exceeding $50,000.00 in the aggregate, or

(ii) to Mortgagee in the case of any particular casualty resulting in damage or destruction exceeding $50,000.00 in the aggregate, for the purposes set forth in Article X of this Mortgage.

Each such policy shall contain, if obtainable at no substantial additional cost, an agreement by the insurer that such policy shall not be canceled without at least thirty (30) days prior notice to Mortgagee.

Section 3.06. If Mortgagor shall fail to procure, pay for and deliver to Mortgagee any policy or policies of insurance and/or renewals thereof as in this Article III required, Mortgagee may at its option, but shall be under no obligation to do so, effect such insurance and pay the premiums therefor, and Mortgagor will repay to Mortgagee on demand any premiums so paid with interest at a rate of five (5%) per cent in excess of the rate charged on the unpaid principal balance pursuant to the terms to the Note from the date of such advance to the date of repayment, and the same shall be secured by this Mortgage.

ARTICLE IV

Repairs and Maintenance

Section 4.01. Mortgagor, at its sole cost and expense, will take good care of the Mortgaged Premises and the sidewalks and curbs adjoining the Mortgaged Premises and will keep

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM    INDEX NO. 69506/2022

NYSCEF DOC. NO. 4                                                    RECEIVED NYSCEF: 12/19/2022

the same in good order and condition, and make all necessary repairs thereto, interior and exterior, structural and nonstructural, ordinary and extraordinary, and unforeseen and foreseen, and will not commit or suffer to be committed any waste of the Mortgaged Premises.

Section 4.02.  The necessity for and adequacy of repairs to the Building pursuant to Section 4.01 hereof shall be measured by the standard which is appropriate for commercial buildings and related facilities of similar construction and class, provided that Mortgagor shall in any event make all repairs necessary to avoid any structural damage or injury to the Building and to keep the Building in a proper condition for their intended use.

Section 4.03.  Mortgagor, at its sole cost and expense shall keep the mortgaged personal property in good condition and repair.

Section 4.04.  When used in this Article IV, the term "repair" and "repairs" shall include all necessary replacements. All repairs made by Mortgagor shall be equal in quality and class to the original work, except where the quality of the original work was the proximate cause for the need for repairs in which case the repairs shall be of superior quality to the original work.

ARTICLE V

Compliance with Laws, Ordinances, Etc.

Section 5.01.  Throughout the term of this Mortgage, Mortgagor shall promptly comply with, or cause to be complied with, all present and future laws, ordinances, orders, rules, regulations and requirements of all federal, state and municipal governments, courts, departments, commissions, boards and officers, any national or local Board of Fire Underwriters, or any other body exercising functions similar to those of the foregoing, foreseen or unforeseen, ordinary as well as extraordinary, which are applicable to the Mortgaged Premises and the sidewalks and curbs adjoining the Mortgaged Premises or to the use or manner of use of the Mortgaged Premises whether or not such law, ordinance, order, rule, regulation or requirement shall necessitate structural changes or improvements.

Section 5.02.  Mortgagor shall have the right, after prior notice to Mortgagee, to contest by appropriate legal proceedings diligently conducted in good faith, without cost or expense to Mortgagee, the validity or application of any law, ordinance, order, rule, regulation or requirement of the nature referred to in Section 5.01 hereof, subject to the following:

(a) If by the terms of any such law, ordinance, order, rule, regulation or requirement, compliance therewith pending the prosecution of any such proceeding may legally be delayed without the incurrence of any lien or charge of any kind against the Mortgaged Premises, Mortgagor may delay compliance therewith until the final determination of such proceeding.

(b) If any lien or charge against the Mortgaged Premises would be incurred by reason of any such delay, Mortgagor nevertheless may contest as aforesaid and delay as

7

Case 7:22-cv-10781-KMK    Document 8-1    Filed 01/20/23    Page 31 of 82

aforesaid, provided Mortgagor (i) furnishes to Mortgagee security, reasonably satisfactory to Mortgagee, against any loss or injury by reason of such contest or delay, and (ii) prosecutes the contest with due diligence.

Anything in this Section to the contrary notwithstanding, if the contestation of the validity or legality of any such law, ordinance, rule, regulation or requirement shall cause a breach of any of the terms, conditions, covenants or provisions of any Lease, then Mortgagor shall not have the right to contest the same, as herein provided, but compliance must be made pursuant to Section 5.01 hereof.

Section 5.03.  Mortgagor shall perform and observe, or cause to be performed or observed, all of the terms, covenants, conditions and provisions of all instruments of record affecting the Mortgaged Premises, noncompliance with which may affect the security given to Mortgagee hereby, or which may impose any duty or obligation upon the Mortgagor or any lessee or other occupant of the Mortgaged Premises or any part thereof, and the Mortgagor shall do or cause to be done all things necessary to preserve intact and unimpaired any and all easements, appurtenances and other interests and rights in favor of or constituting any portion of the Mortgaged Premises.

ARTICLE VI

Changes and Alterations by Mortgagor

Section 6.01.  Mortgagor shall have the right at any time and from time to time during the term of this Mortgage to make, at its sole cost and expense, changes and alterations in or to the Building and subject, however, in all cases to the following, after the improvements to the Mortgaged Premises have been completed:

(a)  No material change or alteration, including any restoration required by Article X or Article XI hereof, but excluding normal decorating or tenant finish work to place a Lessee in possession pursuant to an executed Lease, shall be made without the prior written consent of Mortgagee, such consent not to be unreasonably withheld or delayed if the change or alteration would not materially reduce the economic value of the Mortgaged Premises.

(b)  Any structural change or any alteration involving an estimated cost of more than $50,000.00, shall be conducted under the supervision of an architect and/or engineer selected by Mortgagor and approved in writing by Mortgagee (such approval not to be unreasonably withheld), and no such structural change or alteration shall be made except in accordance with detailed plans and specifications and cost estimates prepared and approved in writing by such architect and/or engineer and approved in writing by Mortgagee (such approval not to be unreasonably withheld or delayed).

(c)  Any change or alteration shall, when completed, be of such a character as not to materially reduce the economic value of the Mortgaged Premises below its value immediately before such change or alteration.

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM
NYSCEF DOC. NO. 4

INDEX NO. 69506/2022
RECEIVED NYSCEF: 12/19/2022

(d) Any change or alteration, once commenced, shall be made promptly (unavoidable delays excepted) and in a good and workmanlike manner and in compliance with all applicable permits and authorizations and building and zoning laws and with all other laws, ordinances, orders, rules, regulations and requirements of all federal, state and municipal governments, departments, commissions, boards and officers, any national or local Board of Fire Underwriters, or any other body hereafter exercising functions similar to any of the foregoing.

(e) If the estimated cost of any such change or alteration shall be in excess of $50,000.00, Mortgagor, before commencement of work, at Mortgagor's sole cost and expense, shall furnish to Mortgagee a surety company performance bond, issued by a surety company reasonably acceptable to Mortgagee, or other security reasonably satisfactory to Mortgagee, in an amount at least equal to the estimated cost of such change or alteration, guaranteeing the completion thereof within a reasonable time, free and clear of all liens, encumbrances, chattel mortgages, conditional bills of sale, and other charges, and in accordance with the plans and specifications approved by Mortgagee. No performance bond or other security shall be required except to the extent that such estimated cost exceeds the amounts deposited pursuant to Sections 10.02, 10.05 and 11.03 hereof.

(f) If the estimated cost of such a change or alteration shall be in excess of $50,000.00, Mortgagor shall pay to Mortgagee the reasonable fees and expenses of any architect selected by Mortgagee to review the plans and specifications and inspect the work on behalf of Mortgagee.

(g) No change or alteration shall, when completed, tie in or connect the Mortgaged Premises with any other building on adjoining property, unless said adjoining property shall be encumbered by a mortgage held by Mortgagee.

ARTICLE VII

Notice to Mechanics and Materialmen

Section 7.01. Nothing in this Mortgage contained shall be deemed or construed in any way as constituting the consent or request of Mortgagee express or implied by inference or otherwise, to any contractor, subcontractor, laborer or Materialmen for the performance of any labor or the furnishing of any materials for any specific improvement, alteration to or repair of the Mortgaged Premises or any part thereof.

Section 7.02. The Mortgagor will, promptly after it has knowledge thereof, discharge, pay or bond, or cause to be discharged, paid or bonded, from time to time when the same shall become due, all lawful claims and demands of mechanics, materialmen, laborers and others which, if unpaid might result in, or permit the creation of, a lien on the Mortgaged Premises or any part thereof, or on the revenue, rents, issues, income and profits arising therefrom and Mortgagor will do

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM    INDEX NO. 69506/2022
NYSCEF DOC. NO. 4                                              RECEIVED NYSCEF: 12/19/2022

or cause to be done everything necessary so that the lien hereof shall be fully preserved, at the cost of the Mortgagor, without expense to the Mortgagee.

## ARTICLE VIII

### Use of Property

Section 8.01.  Mortgagor will use, or cause to be used, the Mortgaged Premises principally and continuously as and for any such use as shall at all times be in full compliance with all applicable building and zoning laws, rules and regulations. Mortgagor shall not use, or permit the use of the Mortgaged Premises for any other principal use without the prior written consent of Mortgagee.  Mortgagee's consent shall not be unreasonably withheld, conditioned or delayed.

Section 8.02.  Mortgagor shall not suffer or permit the Mortgaged Premises, or any portion thereof, to be used by the public, as such, without restriction or in such manner as might reasonably tend to impair Mortgagor's title to the Mortgaged Premises or any portion thereof, or in such manner as might reasonably make possible a claim or claims of adverse usage or adverse possession by the public, as such, or of implied dedication of the Mortgaged Premises or any portion thereof.

Section 8.03.  Mortgagor shall not use or permit the use of the Mortgaged Premises or any part thereof for any purpose, other than the use permitted under Section 8.01 hereof, which in the reasonable opinion of Mortgagee would adversely affect the then value or character of the Mortgaged Premises or any part thereof.

## ARTICLE IX

### Entry on Property by Mortgagee

Section 9.01.  Mortgagor will permit Mortgagee and its authorized representatives to enter the Mortgaged Premises at all reasonable times, with prior notice to the Mortgagor, for the purpose of inspecting the same, subject to the rights of Lessees.

## ARTICLE X

### Damage or Destruction

Section 10.01.  In case of casualty to the Mortgaged Premises resulting in damage or destruction exceeding $50,000.00 in value, Mortgagor shall promptly give written notice thereof to Mortgagee.  Mortgagee shall have the right to elect to use the loss proceeds to reduce the unpaid principal indebtedness or to make the same available to Mortgagor for repair and restoration, and Mortgagee agrees that it will promptly advise Mortgagor of its election with respect thereto. Regardless of the amount of any such damage or destruction, and unless the debt secured hereby is paid in full, Mortgagor shall at its sole cost and expense, except as otherwise provided in this Article X, and whether or not the insurance proceeds, if any, shall be sufficient for the purpose, restore,

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM    INDEX NO. 69506/2022

NYSCEF DOC. NO. 4    RECEIVED NYSCEF: 12/19/2022

repair, replace, rebuild or alter the same as nearly as possible to its value, condition and character immediately prior to such damage or destruction or with such changes or alterations as may be made at Mortgagor's election in conformity with and subject to the conditions of Article VI hereof.

Section 10.02. Subject to the provisions of Section 10.05 and Section 10.07 hereof, and the election of Mortgagee to use the insurance loss proceeds to restore, all insurance money paid to Mortgagee on account of such damage or destruction, less the actual cost, fees and expenses, if any, incurred in connection with adjustment of the loss, shall be retained by Mortgagee in an interest bearing account and applied by Mortgagee to the payment of the cost of temporary repairs or for the protection of property pending completion of permanent restoration, repairs, replacements, rebuilding or alterations (all of which temporary repairs, protection of property and permanent restoration, repairs, replacement, rebuilding or alterations are hereinafter collectively referred to as the "Restoration"), and shall be paid out from time to time as such Restoration progresses upon the written request of Mortgagor, if the work for which payment is requested has been done in a good workmanlike manner and substantially in accordance with the plans and specifications therefor, if any. Each request shall be accompanied by the following:

(1)    A certificate signed by Mortgagor, dated not less than five (5) days prior to such request, setting forth the following:

(A)    That the sum then requested either has been paid, or is justly due to contractors, subcontractors, materialmen, engineers, architects or other persons who have rendered services or furnished materials for the Restoration therein specified or have paid for the same, a brief description of such services and materials, the several amounts so paid or due to each of said persons in respect thereof, that no part of such expenditures has been or is being made the basis, in any previous or then pending request, for the withdrawal of insurance money or has been made out of the proceeds of insurance received by Mortgagor.

(B)    That the cost, as estimated by the persons signing such Certificate, of the Restoration required to be done subsequent to the date of such certificate in order to complete and pay for the same, does not exceed the insurance money, plus any amount deposited by Mortgagor to defray such cost and remaining in the hands of Mortgagee after payment of the sum requested in such certificate.

(2) A search from the title insurance company insuring the advances secured hereby, or other evidence, reasonably satisfactory to Mortgagee, to the effect that there has not been filed with respect to the Mortgaged Premises or any part thereof any vendor's, mechanic's, laborer's, Materialmen's or other lien which has not been discharged of record or bonded, except such as will be discharged by payment of the amount then requested.

Section 10.03. In the event that any such Restoration involves expenditures in excess of $50,000.00 in addition to the certificate required by clause (1) of Section 10.02 hereof there shall also be furnished a certificate signed by the architect and/or engineer in charge of the Restoration, who shall be selected by or on behalf of Mortgagor and approved in writing by Mortgagee, such

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM

NYSCEF DOC. NO. 4

INDEX NO. 69506/2022

RECEIVED NYSCEF: 12/19/2022

approval not to be unreasonably withheld or delayed, certifying to the facts set forth in subclause (1) B of said Section 10.02.

Section 10.04.  Upon compliance with the foregoing provisions of Section 10.02 hereof, Mortgagee shall, out of such insurance money, pay or cause to be paid to Mortgagor or the persons named in Section 10.02, such certificate, the respective amounts stated therein to have been paid by Mortgagor or to be due to them, as the case may be, within thirty (30) days after Mortgagor's written request accompanied by those materials required by this Article X, and which are reasonably satisfactory to Mortgagee.

Section 10.05.  If Mortgagee shall elect to permit the loss proceeds to be used for Restoration and the insurance money at the time held by Mortgagee less the actual cost, fees and expenses, if any, incurred in connection with the adjustment of the loss, shall be insufficient to pay the entire cost of such Restoration, Mortgagor will promptly, upon written demand from Mortgagee, deposit with Mortgagee any sums necessary to make up such deficiency.  If Mortgagor shall fail to do so within thirty (30) days of demand by Mortgagee, Mortgagee shall have the right, exercisable at its option, to apply the insurance proceeds to reduce the unpaid principal sum plus interest and other sums then due and payable to Mortgagee.

Section 10.06.  Upon (i) completion of all the Restoration in a good and workmanlike manner and substantially in accordance with the plans and specifications therefor, if any, and (ii) receipt by Mortgagee of satisfactory evidence of the character required by Clauses (1) and (2) of Section 10.02 hereof, that the Restoration has been completed and paid for in full (or, if any part of such Restoration has not been paid for, adequate security for such payment shall exist in form satisfactory to Mortgagee) and that there are no unbonded liens of the character referred to in said Clause (2), any balance of the insurance money at the time held by Mortgagee shall be paid to Mortgagor or its designee provided Mortgagor is not then in default hereunder (or after the curing of any such default).

Section 10.07.  Notwithstanding any provision of this Article X to the contrary, if at any time during any Restoration of the Mortgaged Premises, Mortgagor shall be in default under any provision of this Mortgage or any documents collateral hereto and such default shall not have been cured within the time limitation pertaining thereto as provided in Section 13.01 hereof Mortgagee shall have no obligation to apply insurance money to Restoration and may apply such insurance money to cure such default, to reduce the outstanding indebtedness secured hereby or complete any repair or Restoration, or to do any one or more of the foregoing as Mortgagee, in its sole discretion, may determine.

ARTICLE XI

Condemnation

Section 11.01.  In the event that the Mortgaged Premises, or any part thereof, shall be taken in condemnation proceedings or by exercise of any right of eminent domain (hereinafter called, collectively "condemnation proceedings"), Mortgagor and Mortgagee shall have the right to

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM    INDEX NO. 69506/2022

NYSCEF DOC. NO. 4    RECEIVED NYSCEF: 12/19/2022

participate in any such condemnation proceedings and the award that may be made in any such condemnation proceedings or proceeds thereof shall be deposited with Mortgagee and distributed in the manner set forth in this Article XI. The parties agree to execute any and all further documents that may be required in order to facilitate collection of any award or awards and the making of any such deposit.

       Section 11.02.  If at any time during the term of this Mortgage title to the whole or substantially all of the Mortgaged Premises shall be taken in condemnation proceedings or by agreement between Mortgagor, Mortgagee and those authorized to exercise such right, Mortgagee shall apply such award or proceeds which it receives pursuant to Section 11.01 hereof to payment of the indebtedness secured by this Mortgage and any balance then remaining shall be paid to Mortgagor. In the event that the amount of the award or proceeds received by Mortgagee shall not be sufficient to pay the then unpaid balance of the said indebtedness, with the accrued interest thereon, Mortgagor shall, within thirty (30) days after the application of the award or proceeds as aforesaid pay such deficiency to Mortgagee. For the purposes of this Section 11.02 "substantially all of the Mortgaged Premises" shall be deemed to have been taken if the portion of the Mortgaged Premises not so taken cannot be so repaired or reconstructed as to constitute a complete commercial rental space, after payment of all operating expenses. As used above, the term "operating expenses" shall be deemed to exclude depreciation, income taxes and franchise taxes.

       Section 11.03.  If at any time during the term of this Mortgage title to less than the whole or substantially all of the Mortgaged Premises shall be taken as aforesaid, all of the award or proceeds collected by Mortgagee pursuant to Section 11.01 hereof, shall be held by Mortgagee and applied and paid over toward the cost of demolition, repair and restoration, substantially in the same manner and subject to the same conditions as those provided in Section 10.02 hereof with respect to insurance and other monies, provided the Mortgagor is not in default hereunder beyond any applicable grace period. Any balance remaining in the hands of Mortgagee after payment of such costs of demolition, repair and restoration as aforementioned, shall be retained by Mortgagee and applied in reduction of the indebtedness secured hereby. In the event that the cost of such demolition, repairs and restoration shall exceed the net amount collected by Mortgagee, Mortgagor shall pay the deficiency or the costs of such demolition, repair and restoration, as the case may be.

       Section 11.04.  If at any time during the term of this Mortgage the temporary use of the whole or any part of the Mortgaged Premises shall be taken in condemnation proceedings, all of the award or proceeds collected by Mortgagee pursuant to Section 11.01 hereof, shall be held by Mortgagee and applied by Mortgagee toward the payment of the monthly principal and interest payments due on the indebtedness secured by this Mortgage and such other sums as are due to Mortgagee hereunder until such time as the indebtedness secured hereby and such other sums as are due to Mortgagee under this Mortgage are completely satisfied and paid, except that, if such taking by condemnation proceedings results in changes and alterations to the Mortgaged Premises or any part thereof which would necessitate an expenditure to restore the Mortgaged Premises or any part thereof to its former condition, then such portion of the award or proceeds as in Mortgagee's reasonable estimation shall be necessary to cover the cost of Restoration shall be retained by Mortgagee, without application as aforesaid, and be applied and paid over toward the Restoration of the Mortgaged Premises, or any part thereof, to its former condition.

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM    INDEX NO. 69506/2022
NYSCEF DOC. NO. 4                                            RECEIVED NYSCEF: 12/19/2022

Section 11.05. Mortgagor shall not be entitled to share or retain any award or awards made in condemnation proceedings for consequential damages or for the taking of rights in, under or above the streets adjoining said lands, or the rights and benefits of light, air or access to said streets, or for taking of space, or rights therein, below the surface of, or above, the Mortgaged Premises, and such awards shall be deposited with Mortgagee who, if it has not elected to apply the award or proceeds to reduce the indebtedness secured hereby, shall apply and pay the same over towards the cost of any demolition, repair and Restoration of the Mortgaged Premises as shall be necessitated by such taking, substantially in the same manner and subject to the same conditions as those provided in Section 10.02 hereof with respect to insurance and other monies, and any balance remaining in the hands of Mortgagee shall be retained by Mortgagee, and applied in reduction of the indebtedness secured by this Mortgage in the same manner as provided in Section 11.03 with respect to the balance of the award or awards therein referred to.

Section 11.06. Notwithstanding any provision of this Article XI to the contrary, if at any time during any demolition and Restoration of the Mortgaged Premises, Mortgagor shall be in default under any provision contained herein or in the evidence of the indebtedness secured hereby and such default shall not have been cured within the time limitation pertaining thereto as provided in Section 14.01 hereof, Mortgagee shall have no obligation to apply the condemnation proceeds to further demolition or Restoration and may apply such condemnation proceeds to cure any default hereunder or any collateral documents related hereto, to reduce the outstanding indebtedness secured hereby, to complete any demolition or Restoration or any one or more of the foregoing as Mortgagee, in its sole discretion, may determine.

Section 11.07. In the case of any taking covered by the provisions of this Article XI, Mortgagor and Mortgagee shall be entitled to reimbursement from any award or awards of all reasonable costs, fees and expenses incurred in the determination and collection of any such awards.

ARTICLE XII

Lease of Mortgaged Premises

Section 12.01. Mortgagor, as lessor, may enter into leases with tenants, as lessees, for parts of the Mortgaged Premises. A copy of each lease shall be submitted to Mortgagee.

Section 12.02. Mortgagor agrees that each existing lease of any part of the Mortgaged Premises shall be subordinate to the Mortgage and the rights of Mortgagee hereunder, or can be made subordinate to this Mortgage by the execution of a Mortgagee's Non-Disturbance agreement.

Section 12.03. Mortgagor will at all times, keep, perform and observe all covenants, agreements, terms, provisions and conditions of the leases on its part, as lessor to be kept, performed or observed, and will do all things necessary to prevent default on its part thereunder.

Section 12.04. If at any time or from time to time Mortgagor acquires actual knowledge of a material default by any lessee of any covenant, agreement, term, provision or

condition on the part of any lessee to be kept, performed or observed, Mortgagor shall notify Mortgagee, setting forth in detail the nature of such default.

Section 12.05. Notwithstanding any provision of this Article XII, the Mortgagee shall not inhibit or impair the Mortgagor's ability to prosecute any alleged tenant lease violations.

ARTICLE XIII

General Covenants

Section 13.01. Mortgagor will pay the principal of and interest on the indebtedness secured by this Mortgage pursuant to the terms of the Note and this Mortgage. If any installment of interest or principal is not paid within ten (10) days of when due and Mortgagee shall accelerate the maturity of the indebtedness, then the unpaid principal sum shall bear interest at a rate of twenty-four (24%) percent ("Default Rate") in excess of the rate charged under the Note prior to acceleration on the unpaid principal balance from the due date thereof until paid, and shall be secured by this Mortgage.

Section 13.02. This Mortgage creates a valid first lien on the Mortgaged Premises and there are no offsets, counterclaims or defenses to the principal sum advanced under the Note and due and payable as of the date hereof, secured hereby, or to any part thereof, or the interest thereon, either at law or in equity.

Section 13.03. Mortgagor within ten (10) days upon request in person, or within thirty (30) days upon request by mail, will furnish a duly acknowledged written statement in form reasonably satisfactory to Mortgagee setting forth the amount of the indebtedness then secured by this Mortgage and setting forth that there are no offsets or defenses existing against the indebtedness secured by this Mortgage or any payment thereof, or, if such offsets or defenses are alleged to exist, the amount, nature and extent thereof.

Section 13.04. In the event that the Note or this Mortgage or any assignment thereof, shall hereafter be held by a court of competent jurisdiction or departmental ruling to be subject to the payment of any documentary stamp or other tax, Mortgagee may pay such tax together with interest and penalties, if any, and Mortgagor will repay to Mortgagee or demand any amount so paid, with interest at a rate of five (5%) per cent in excess of the rate charged hereunder on the unpaid principal balance from the date of such advance to the date of repayment, and the same shall be secured by this Mortgage.

Section 13.05. Mortgagee in any action to foreclose the Mortgage or upon the actual waste to any part of the Mortgaged Premises or upon the occurrence of any default hereunder, shall be at liberty to the extent permitted by law, with notice, to apply for the appointment of a receiver of the Mortgaged Premises and all income therefrom, and shall be entitled to the appointment of such receiver as a matter of right, without regard to the value of the Mortgaged Premises as security for the indebtedness secured by this Mortgage, or the solvency or insolvency of any person then liable for the payment of the said indebtedness.

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM

NYSCEF DOC. NO. 4

INDEX NO. 69506/2022

RECEIVED NYSCEF: 12/19/2022

Section 13.06.  In case of a foreclosure sale of the Mortgaged Premises by the Mortgagee the same may be sold in one parcel, and the Mortgaged Premises may be sold as an entirety or in such parcels, manner or order as Mortgagee in its sole discretion may elect, any provision of law to the contrary notwithstanding.  Moreover, the Mortgagee shall not be required to proceed hereunder before proceeding against any other security, shall not be required to proceed against other security before proceeding hereunder, and shall not be precluded from proceeding against any or all of any security in any order or at the same time.

Section 13.07.  If default shall exist in any of the terms, clauses, conditions or covenants of this Mortgage, as hereafter modified or extended, or of the Note and such default shall not have been cured within the time limitation pertaining thereto as provided in Section 14.01 hereof, Mortgagee shall have the right forthwith after the expiration of such time limitation pertaining to the curing of any such default, to enter upon and take possession of the Mortgaged Premises, and let the same and receive all the rents, issues and profits thereof, due or to become due, and apply the same, after payment of all necessary charges and expenses, on account of the indebtedness secured by this Mortgage, and said rents, issues and profits are, in event of any such default which shall not have been cured, hereby assigned to Mortgagee as additional security for the indebtedness hereby secured, together with the Leases and all other documents evidencing such rents, issues and profits, and any and all deposits held as security under said Leases.  At the option of Mortgagee, such entry and taking possession of the Mortgaged Premises shall be accomplished either by actual entry and possession or by notice to Mortgagor.  In such event, any lessee defaulting in the payment to Mortgagee of any rent may be dispossessed by the usual summary proceedings.  This covenant shall become effective whether foreclosure has been instituted or not and without applying for a receiver.

Section 13.08.  Mortgagor will pay to a receiver appointed pursuant to Section 13.05 hereof, or to Mortgagee upon its entry into possession of the premises pursuant to Section 13.07 hereof, in monthly installments, in advance, the reasonable rental value of the use and occupation of any portion of the Mortgaged Premises used and occupied by Mortgagor on or after such appointment or such entry, and in default of such payment, Mortgagor may be dispossessed by the usual summary proceedings.

Section 13.09.  All moneys provided to be paid by the terms of this Mortgage shall be payable in lawful money of the United States of America which shall be legal tender in payment of all debts and dues, public and private, at the time of payment.

Section 13.10.  In the event of the passage, after the date of this Mortgage, of any law deducting from the value of the Mortgaged Premises, for the purposes of taxation, any lien thereon, or changing in any way the laws now in force for the taxation of mortgages or debts secured by mortgages, for state or local purposes, or the manner of the collection of any such taxes, so as to affect adversely the rights or interest of Mortgagee, then and in such event, Mortgagor shall bear and pay the full amount of such taxes, provided that if for any reason payment by the Mortgagor of any such new or additional taxes would be unlawful or if the payment thereof would constitute usury or render the loan or indebtedness secured hereby wholly or partially usurious under any of the terms or provisions of this Mortgage or otherwise, Mortgagee may, at Mortgagee's option, declare the whole

16

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM    INDEX NO. 69506/2022

NYSCEF DOC. NO. 4    RECEIVED NYSCEF: 12/19/2022

sum secured hereby with interest thereon, to be immediately due and payable, or Mortgagee may, at Mortgagee's option, pay the amount or portion of such taxes as renders the loan or indebtedness secured by this Mortgage unlawful or usurious in which event Mortgagors shall concurrently therewith pay the remaining and lawful and non-usurious portion or balance of said taxes.

Section 13.11.  This Mortgage shall constitute a Security Agreement under the Uniform Commercial Code and the execution and delivery hereof shall evidence the intent of both Mortgagor and Mortgagee to that effect.

Section 13.12.  Mortgagee shall have the right to refile any security interest given by Mortgagor to Mortgagee as collateral security for the indebtedness secured by this Mortgage, and Mortgagor hereby authorizes Mortgagee to file "financing statements" and "continuation statements" now or at any time provided by law, when and as often as it may be necessary to preserve the priority of Mortgagee's lien on said chattels over all other liens thereon and to pay all necessary fees for such refiling, and Mortgagor agrees to repay to Mortgagee on demand any amount so paid, and, if not so paid within thirty (30) days after written demand, such amount shall be repaid with interest at a rate five (5%) per cent in excess of the rate charged under the Note on the unpaid principal balance from the date of such advance to the date of repayment, and the same shall be secured by this Mortgage.

Section 13.13.  From time to time, but not more frequently than once in any one calendar year, Mortgagor shall, if requested by Mortgagee, execute and deliver to Mortgagee within thirty (30) days after request, a new chattel mortgage or "security agreement" as now or hereafter provided by law, which shall be a first lien on all articles of Personal Property owned by Mortgagor and placed in or upon the Mortgaged Premises since the filing of the last previous chattel mortgage or "security agreement" given by Mortgagor to Mortgagee, and simultaneously with the delivery of such new chattel mortgage or "security agreement" Mortgagor shall pay to Mortgagee the amount of the fee for filing the same.

Section 13.14.  From time to time, but not more frequently than once in any one calendar year, Mortgagor, at its sole cost and expense shall, if so requested by Mortgagee, furnish Mortgagee with a search of the chattel mortgage or "security agreement" records of the County of Westchester and Office of the Secretary of the State of New York, and/or such other office as may at that time be the official depository of such records, such search to be prepared by a title company doing business in the State of New York.

Section 13.15.  Mortgagor covenants that Mortgagor will receive the advances secured by this Mortgage and will hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of improvements, and that Mortgagor will apply the same first to the payment of the cost of required improvements, if any, before using any part of the total of the same for any other purpose.

Section 13.16.  If Mortgagor leases any of the Mortgaged Premises, security deposits in excess of an amount equal to two months' rent under all leases for any part of the premises shall be deposited and pledged with Mortgagee so that they cannot be used by the Mortgagor without the consent of the Mortgagee, and so that said deposits can be transferred to the purchaser at any

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM    INDEX NO. 69506/2022
NYSCEF DOC. NO. 4                                           RECEIVED NYSCEF: 12/19/2022

foreclosure sale.

Section 13.17.  Mortgagor will keep and maintain or will cause to be kept and maintained proper and accurate books, records and accounts reflecting all items of income and expense in connection with the operation of the Mortgaged Premises and in connection with any services, equipment or furnishings provided by any other person or entity whatsoever, excepting sublessors unrelated to and unaffiliated with the Mortgagor and who lease from the Mortgagor portions of the Mortgaged Premises for the purposes of occupying the same.  Mortgagee or its designee shall have the right from time to time, with reasonable notice to Mortgagor, at all times during normal business hours to examine such books, records and accounts at the office of the Mortgagor or other person or entity maintaining such books, records and accounts and to make copies or extracts thereof as Mortgagee shall desire.

Section 13.18.  Mortgagor shall, upon request, promptly pay all expenses and costs incurred by Mortgagee, including reasonable attorney's fees, together with interest thereon at the rate of five (5%) per cent in excess of the interest rate charged under the Note on the unpaid principal balance from the date of such advance to the date of repayment, in connection with any action, proceeding, litigation or claim instituted or asserted by or against Mortgagee or in which Mortgagee becomes engaged, including, without limitation, bankruptcy, reorganization, arrangements, receivership or similar proceedings, wherein it becomes necessary in the reasonable opinion of Mortgagee to protect Mortgagee's interest in the Mortgaged Premises or the security affected thereby, or to defend or uphold the lien created by this Mortgage, or the validity or effectiveness of any assignment of claim, award, payment, property damage insurance policy or any other right or property conveyed, encumbered or assigned by Mortgagor to Mortgagee hereunder, or the priority of any of the same, and all such expenses and costs, and said interest thereon, shall be added to and become part of the principal indebtedness of Mortgagor hereunder and be secured in all respects by this Mortgage, as if the same were part of the principal indebtedness of Mortgagor hereunder; provided, however, that in any action to foreclose this Mortgage, or to recover or collect the sums due hereunder, the provisions of law and of this Mortgage relative to the recovery of costs, disbursements, commissions, allowances and attorney's fees, shall prevail unaffected by this Section 13.18.

Section 13.19.  Mortgagor agrees that should the Mortgaged Premises at any time be or become subject to the lien of any mortgage in connection with which payments on account of the indebtedness secured by this Mortgage are to be made directly or indirectly by or through the mortgagee or beneficiary thereunder, regardless of such mortgagee or beneficiary, the whole of the principal and interest and other sums secured by this Mortgage, at the option of Mortgagee, shall immediately become due and payable.

Section 13.20.  Mortgagor shall, promptly upon request of Mortgagee, do all acts and things, including but not limited to the execution of any further assurances, deemed reasonably necessary by Mortgagee, to establish, confirm, maintain and continue the lien created and intended to be created by this Mortgage, all assignments made or intended to be made pursuant hereto, and all other rights and benefits conferred or intended to be conferred on Mortgagee hereby, and Mortgagor

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM    INDEX NO. 69506/2022
NYSCEF DOC. NO. 4                                              RECEIVED NYSCEF: 12/19/2022

shall pay all costs incurred by Mortgagee in connection therewith, including all filing and recording costs, cost of searches, and reasonable counsel fees incurred by Mortgagee.

Section 13.21.  Mortgagor agrees, to the full extent that it may lawfully do so, that in any foreclosure brought by Mortgagee hereunder provided an Event of Default has occurred, it will not at any time insist upon or plead or in any way take advantage of and hereby waives and relinquishes the benefits of any present or future laws: (i) exempting the Mortgaged Premises or any part thereof from attachment, levy or sale on execution, or any part of the proceeds arising from any sale thereof, (ii) staying execution or other process, (iii) granting redemption or a moratorium or permitting the marshaling of assets and (iv) requiring valuation or appraisement of any part of the Mortgaged Premises levied or sold on execution of any judgment recovered for the indebtedness secured by this Mortgage, the purpose being that the Mortgagor will not prevent, hinder or delay the enforcement of the provisions of this Mortgage or any rights or remedies the Mortgagee may have hereunder or by law.

Section 13.22.  Except as otherwise specifically permitted by the Mortgagee, Mortgagor will not create or permit to accrue upon all or any part of the Mortgaged Premises any debt, lien or charge which would be prior to or on a parity with the lien created by this Mortgage. If any such debt, lien or charge is created or accrues upon the Mortgaged Premises, Mortgagee may at its option, but shall be under no obligation to do so, pay the same and Mortgagor will repay to Mortgagee on demand any amount so paid by Mortgagee, with interest at the rate of five (5%) per cent in excess of the interest rate charged under the Note on the unpaid principal balance from the date of such advance to the date of repayment, and the same shall be secured by this Mortgage.

Section 13.23.  Mortgagor shall observe and perform each and every term to be observed or performed by Mortgagor pursuant to the terms of any agreement or recorded instrument affecting or pertaining to the Mortgaged Premises.

Section 13.24.  If default in the performance of any of the covenants of Mortgagor herein occurs and continues beyond any applicable cure period, Mortgagee may, at its discretion, remedy the same and for such purpose shall have the right to enter upon the Mortgaged Premises or any portion thereof without thereby becoming liable to Mortgagor or any person in possession thereof holding under Mortgagor. If Mortgagee shall remedy such a default or appear in, defend, or bring any action or proceeding to protect its interest in the Mortgaged Premises or to foreclose the Mortgage, or collect the indebtedness secured hereby, the cost and expense thereof (including reasonable attorney's fees to the extent permitted by law), with interest as provided in this Section 13.24, shall be paid by Mortgagor to Mortgagee upon demand. All such costs and expenses incurred by Mortgagee in remedying such default or in appearing in, defending, or bringing any such action or proceeding shall be paid by Mortgagor to Mortgagee upon demand, with interest thereon at the rate of five (5%) per cent in excess of the interest charged under the Note on the unpaid principal balance from the date of such advance to the date of repayment. All such costs and expenses incurred by Mortgagee pursuant to the terms of this Mortgage with interest, shall be secured by this Mortgage.

Section 13.25.  If at any time without the prior written consent of the Mortgagee (a) the Mortgaged Premises is sold, conveyed or otherwise transferred or (b) there is any change in the

Mortgagor or the Member of the Mortgagor, other than a change caused by death or incapacity (c) the members of Mortgagor make a sale or transfer of all or a substantial portion of their corporate shares in the Mortgagor, (d) the Mortgagor conveys or leases the air development rights of the Mortgaged Property without the prior written consent of the mortgagee or (e) the Mortgagor shall encumber the Mortgaged Premises to secure the payment of a subordinate debt without the prior written approval of the Mortgagee, then Mortgagee shall have the right to declare the principal sum remaining unpaid and accrued and unpaid interest thereon to be immediately due and payable.

Section 13.26. Mortgagee shall have the right from time to time to take action to recover any sum or sums which constitute a part of the indebtedness secured hereby as the same become due, without regard to whether or not the principal balance secured by this Mortgage shall be due, and without prejudice to the right of Mortgagee thereafter to bring an action of foreclosure, or any other action, for a default or defaults by Mortgagor existing at the time such earlier action was commenced.

Section 13.27. All right, title and interest of Mortgagor in and to all gas and electric fixtures, radiators, heaters, engines and machinery, boilers, ranges, elevators, escalators, incinerators, faucets and other plumbing and heating fixtures, ventilating apparatus, refrigerating plant, refrigerators, whether mechanical or otherwise, cooking apparatus and utensils, fire prevention and extinguishing apparatus, furniture, shades, awnings, screens, blinds, rugs, carpets, and other floor coverings, lamps, draperies, curtains, hangings, pictures and other furnishings, and such other goods and chattels and personal property as are ever used or furnished in letting or operating any of the Building, and all renewals or replacements thereof or additions thereto or articles in substitution thereof, whether or not the same are or shall be attached to the Building in any manner, and also any and all other fixtures and articles of personal property, now or hereafter attached to or used in connection with the premises, expressly excepting and excluding, however, any materials, supplies, merchandise, or other personal property which, in the ordinary course of business would be consumed, sold, or otherwise disposed of are and shall be deemed to be a portion of the security for the indebtedness covered by this Mortgage, which is hereby spread to cover the same. If any of the foregoing fixtures or articles of personal property be subject to a conditional bill of sale, chattel mortgage, or other agreement creating a security interest, then all the right, title and interest of Mortgagor in and to such property, together with the benefit of any deposits or payments now or hereafter made thereon, shall be embraced within this Mortgage. All goods, chattels, fixtures and articles of personal property referred to in this Section 13.27 are collectively referred to as "Personal Property".

Section 13.28. Mortgagor covenants that an inquiry and investigation has been made on behalf of the Mortgagor concerning the present and past usages of the Mortgaged Premises and based thereon, Mortgagor represents and warrants to Mortgagee that, to the best of its knowledge, (a) the Mortgaged Premises have never been used as a depository for Hazardous Materials, (b) the Mortgaged Premises are not now contaminated by Hazardous Materials and (c) no asbestos, PCB's or other hazardous materials have been used or presently exists in any Building on the Mortgaged Premises, other than heating oil, cleaning materials and other such similar materials which are stored and used pursuant to existing law. Mortgagor further covenants that at no time during the term of this Mortgage will Mortgagor use or permit the Mortgaged Premises to be used in any way whereby

20

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM

NYSCEF DOC. NO. 4

INDEX NO. 69506/2022

RECEIVED NYSCEF: 12/19/2022

it may become contaminated by Hazardous Materials or become a depository for Hazardous Materials or permit the presence of Hazardous Materials on the Mortgaged Premises other than those materials which are permitted to be stored and used pursuant to existing law, and that, in the event at any time Mortgagee shall become financially or otherwise liable to the United States of America, the State of New York, the County of Westchester or any department, bureau or agency thereof on account of Mortgagor's use of the Mortgaged Premises, including, but not limited to, the removal of Hazardous Materials, the Mortgagor shall, upon written demand from Mortgagee, reimburse Mortgagee for all costs, including reasonable attorney's fees and out-of-pocket expenses, and all loss, damages and liabilities incurred by Mortgagee by reason of the foregoing with interest thereon at a rate of five (5%) per cent in excess of the rate charged on the unpaid principal balance from the date of such payment by Mortgagee to the date of repayment and the same shall be secured by this Mortgage. The term "Hazardous Materials" as used in this Mortgage shall include, without limitation, asbestos, gasoline, petroleum products, explosives, radioactive materials, polychlorinated biphenyls or related or similar materials or other substances or materials defined as hazardous or toxic substances or materials by any applicable federal, state or local law, ordinance, rule or regulation. Any provision to the contrary herein the liability of Mortgagor to Mortgagee under the covenants of this section is not limited by any exculpatory provisions in any document evidencing or executed in connection with any indebtedness secured by this Mortgage including any other documents securing or guaranteeing such indebtedness, and shall survive any foreclosure or any other transfer or termination of this Mortgage regardless of the means of such transfer or termination. Notwithstanding the foregoing sentence, the liability of the Mortgagor to Mortgagee under the covenants of this section shall terminate upon the cash payment in full of the Indebtedness provided that at the time of such payment no claim has been made against Mortgagee for any environmental matter in any way connected to the Property.

Section 13.29. Provided there is no Event of Default continuing hereunder, then this Mortgage shall be null and void upon the Note being well and truly paid according to its tenor and all the obligations therein and herein imposed upon the Mortgagor being fully performed, otherwise to remain in full force and effect.

Section 13.30. Mortgagor represents and covenants that (a) it is a valid limited liability company duly organized and presently existing under the laws of the State of New York, (b) all necessary filings and publications in the State of New York have been completed on a timely basis, (c) Michael Caridi is the member of Mortgagor and is duly authorized to act on behalf of the Mortgagor.

Section 13.31. In the event that Mortgagor shall, during the term of this Mortgage, request an assignment of this Mortgage, which will result in the repayment of the Note, then in such event, the Mortgagee may, in its sole discretion, agree, or elect not to agree to the assignment of this Mortgage. In the event that the Mortgagee agrees to assign this Mortgage, the Mortgagor understands that it will pay an assignment fee to Mortgagee in an amount not to exceed ½ of 1% of the then principal balance of the Note. This fee shall be in addition to all amounts due on the Note including any prepayment fees.

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM

NYSCEF DOC. NO. 4

INDEX NO. 69506/2022

RECEIVED NYSCEF: 12/19/2022

ARTICLE XIV

Events of Default and Remedies

Section 14.01. If any of the following events (herein called Events of Default) shall occur and be continuing, that is to say:

(a) if default shall be made in the payment of any payment of the principal or of interest on the indebtedness secured hereby or any other sum which is payable hereunder or under any other indebtedness due from the Mortgagor to the Mortgagee for this Mortgage as and when the same shall have become due and payable as herein or thereon provided, and such default shall continue for a period of five (5) days;

(b) if default shall be made in the due observance or performance of any covenant, condition or agreement on the part of Mortgagor contained in this Mortgage, the Note or Section 2.01 hereof, and such default shall continue for a period of thirty (30) days after written notice from Mortgagee provided, however, that if the nature of Mortgagor's default is such that more than thirty (30) days are reasonably required for its cure, then it shall not be deemed to be a default of this Mortgage by Mortgagor if Mortgagor commences such cure within said thirty (30) day period and thereafter diligently prosecutes such cure to completion; or

(c) if any warranty, representation, certification, financial statement or other information made or furnished at any time pursuant to the terms hereof, by Mortgagor, or by any person or entity on behalf of mortgagor, or in any way in connection with the loan secured hereby, shall prove to be materially false or misleading and to have been made or furnished with knowledge of the false nature thereof; or

(d) if default shall be made by Mortgagor in the performance of, or compliance with, any of the provisions, warranties, covenants, agreements, promises, terms or conditions herein other than those referred to in the foregoing clauses (a) to (c) inclusive above, and such default shall continue for a period of thirty (30) days after written notice thereof from Mortgagee and such default shall continue for a period of thirty (30) days after written notice from Mortgagee, provided, however, that if the nature of Mortgagor's default is such that more than thirty (30) days are reasonably required for its cure, then it shall not be deemed to be a default of this Mortgage by Mortgagor if Mortgagor commences such cure within said thirty (30) day period and thereafter diligently prosecutes such cure to completion; or

(e) If Mortgagor or any guarantor shall:

(i) apply for, consent to or acquiesce in the appointment of a receiver, trustee or liquidator of it or him or of all or a substantial part of its or his assets, or the

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM
NYSCEF DOC. NO. 4

INDEX NO. 69506/2022
RECEIVED NYSCEF: 12/19/2022

Mortgaged Premises or any interest in any part thereof, (the term "acquiesce" includes but is not limited to, the failure to file a petition or motion to vacate or discharge any order, judgment or decree providing for such appointment within thirty (30) days after the appointment); or

(ii) file a voluntary petition in bankruptcy, or admit in writing its inability to pay its or his debts as they come due; or

(iii) make a general assignment for the benefit of creditors; or

(iv) file a petition or an answer seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief for itself or himself under the present or any future federal bankruptcy act or any other statute or law relative to bankruptcy, insolvency, or other relief for debtors; or

(v) file an answer admitting the material allegations of, or consent to, or default in answering, a petition filed against it or him in any bankruptcy, reorganization or insolvency proceeding; or

(f) if any order shall be entered by a court of competent jurisdiction adjudicating Mortgagor or any guarantor a bankrupt, which order shall continue unstayed and in effect for any period of sixty (60) consecutive days, unless such order is unappealable; or

(g) if an order, judgment or decree shall be entered by any court of competent jurisdiction, adjudicating Mortgagor or any guarantor insolvent, approving a petition seeking reorganization or arrangement of Mortgagor or any guarantor, appointing a receiver, trustee or liquidator of it or any of them or of all or a substantial part of its or their assets and such order, judgment or decree shall continue in full force and effect for any period of sixty (60) consecutive days; or

(h) if final judgment for the payment of $10,000.00 or more shall be rendered against Mortgagor or any guarantor and Mortgagor or any guarantor shall not discharge the same or cause it to be discharged within ninety (90) days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which, or pursuant to which, said judgment was granted, based or entered within the relative time to appeal and/or secure a stay of execution pending such appeal;

then upon the happening of any one or more of said Events of Default, the entire unpaid balance of the principal indebtedness, interest accrued thereon, and all other sums secured by this Mortgage shall, at the option of Mortgagee and following written notice from the Mortgagee, and Mortgagor's failure to cure within the ten (10) days following receipt of such written notice, become immediately due and payable, and in any such Event of Default, Mortgagee may forthwith, and without further delay undertake any one or more of the following:

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM

INDEX NO. 69506/2022

NYSCEF DOC. NO. 4

RECEIVED NYSCEF: 12/19/2022

(1) Foreclosure. Institute an action of mortgage foreclosure, or take such other action as the law may allow, at law or in equity, for the enforcement thereof and realization on the Mortgaged Premises or any other security which is herein or elsewhere provided for, and proceed thereon to final judgment and execution thereon for the entire unpaid balance of the principal indebtedness, with interest, at the rate specified herein to the date of default and thereafter at the rate of 24 per cent per annum  to the date of judgment, together with all other sums secured by this Mortgage, all costs of suit, interest at said rate, or the highest rate permitted by law, whichever is greater, on any judgment obtained by Mortgagee until actual payment is made of the full amount due Mortgagee, and a reasonable attorney's fee for collection, without further stay, any law, usage or custom to the contrary notwithstanding.

(2) Entry. Mortgagee personally, or by its agents or attorneys, may enter into and upon all or any part of the Mortgaged Premises, and each and every part thereof, and may exclude the Mortgagors, their agents and servants wholly therefrom without liability for trespass, damages or otherwise and Mortgagor agrees to surrender possession to Mortgagee on demand after the happening of any Event of Default; and having and holding the same may use, operate, manage and control the Mortgaged Premises and conduct the business thereof, either personally or by its superintendents, managers, agents, servants, attorneys or receivers; and upon every such entry, the Mortgagee, at the expense of the Mortgaged Premises, from time to time, either by purchase, repairs or construction, may maintain and restore the Mortgaged Premises, whereof it shall become possessed as aforesaid, may complete the construction of the Building, structures and improvements and in the course of such completion may make such changes in the contemplated or completed Building, structures and improvements as it may deem desirable and may insure the same; and likewise, from time to time, at the expense of the Mortgaged Premises, the Mortgagee may make all necessary or proper repairs, renewals and replacements and such useful alterations, addition, betterments and improvements thereto and thereon as it may deem advisable; and in every such case the Mortgagee shall have the right to manage and operate the Mortgaged Premises and to carry on the business thereof and exercise all rights and powers of the Mortgagors with respect thereto either in the name of the Mortgagors or otherwise as it shall deem best; and the Mortgagee shall be entitled to collect and receive all earnings, revenues, rents, issues, profits and income of the Mortgaged Premises and every part thereof, and after deducting the expenses of conducting the business thereof and of all maintenance, repairs, renewals, replacements, alterations, additions, betterments and improvements and amounts necessary to pay for taxes, assessments, insurance and prior or other proper charges upon the Mortgaged Premises or any part thereof, as well as just and reasonable compensation for the services of the Mortgagee and for all attorneys, counsel, agents, clerks, servants, and other employees by it properly engaged and employed, the Mortgagee shall apply the moneys arising as aforesaid, first, to the payment of the unpaid principal indebtedness secured hereby and the interest thereon, when and as the same shall become payable and second, to the payment of any other sums required to be paid by the Mortgagor under this Mortgage or the Note.

(3) Receivership. Have a receiver appointed to enter into possession of the Mortgaged Premises, collect the earnings, revenues, rents, issues, profits and income therefrom and apply the same as the court may direct. Mortgagee shall be entitled to the appointment of a receiver with notice but without the necessity of proving either the inadequacy of the security or the insolvency of the Mortgagor or any other person who may be legally or equitably liable to pay money

24

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM

NYSCEF DOC. NO. 4

INDEX NO. 69506/2022

RECEIVED NYSCEF: 12/19/2022

secured by this Mortgage and the Mortgagor and each such person shall be deemed to have waived such proof and to have consented to the appointment of such receiver. Should the Mortgagee or any receiver collect earnings, revenues, rents, issues, profits or income from the Mortgaged Premises, the money so collected shall not be substituted for payment of the debt nor can they be used to cure the default, without the prior written consent of the Mortgagee. Mortgagee shall be liable to account only for earnings, revenues, rents, issues, profits and income actually received by Mortgagee.

Section 14.02. Upon the occurrence of any Event of Default hereunder, Mortgagee in pursuance of the foregoing remedies, or in addition thereto (i) shall be entitled to resort to its several securities for the payment of the sums secured by this Mortgage in such order and manner as Mortgagee may think fit without impairing Mortgagee's lien in, or rights to, any of such securities and without affecting the liability of any person, firm, corporation, or other entity for the sums secured by this Mortgage, except to the extent that the indebtedness secured by this Mortgage shall have been reduced by the actual monetary consideration, if any, received by Mortgagee from the proceeds of such security, (ii) may, in Mortgagee's sole discretion, release for such consideration, or none, as Mortgagee may require, any portion of the Mortgaged Premises without, as to the remainder of the security, in any way impairing or affecting the lien of this Mortgage, or the priority thereof, or improving the position of any subordinate lien holder with respect thereto, except to the extent that the indebtedness secured by this Mortgage shall have been reduced by the actual monetary consideration, if any, received by Mortgagee for such release; and/or (iii) may accept the assignment or pledge of any other property in place thereof as Mortgagee may require without being accountable for so doing to any other lienor.

Section 14.03. No failure by Mortgagee to insist upon the strict performance of any covenant, agreement, provision, term or condition of this Mortgage or the Note or to exercise any right or remedy consequent upon a breach thereof, shall constitute a waiver of any such breach or of such covenant, agreement, provision, term or condition. No covenant, agreement, provision, term or condition of this Mortgage to be performed or complied with by Mortgagor, and no breach thereof, shall be waived, altered or modified except by a written instrument executed by Mortgagee. No waiver of any breach shall affect or alter this Mortgage but each and every covenant, agreement, provision, term and condition of this Mortgage shall continue in full force and effect with respect to any other then existing or subsequent breach thereof.

Section 14.04. Each right and remedy of Mortgagee provided for in this Mortgage shall be in addition to every other right or remedy provided for herein or now or hereafter existing at law, or in equity or by statute or otherwise, and the exercise or beginning of the exercise by Mortgagee of any one or more of the rights or remedies provided for in this Mortgage or now or hereafter existing at law, or in equity or by statute or otherwise shall not preclude the simultaneous or later exercise by Mortgagee of any or all other rights or remedies provided for herein or now or hereafter existing at law, or in equity or by statute or otherwise.

Section 14.05. In the event of any breach or threatened breach by Mortgagor of any of the covenants, agreements, terms or conditions contained in this Mortgage, Mortgagee shall be entitled to enjoin such breach or threatened breach and shall have the right to invoke any right and remedy allowed at law or in equity or by statute or otherwise as though other remedies were not

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM
NYSCEF DOC. NO. 4

INDEX NO. 69506/2022
RECEIVED NYSCEF: 12/19/2022

provided for in this Mortgage.

Section 14.06. In the event that Mortgagor is an occupant of part of the Mortgaged Premises, such Mortgagor hereby agrees to surrender the possession of said part to Mortgagee immediately upon any Event of Default hereunder and if such Mortgagor remains in possession such possession shall be as tenant of Mortgagee, and such Mortgagor shall pay monthly in advance to Mortgagee such rent for the premises so occupied as the Mortgagee may reasonably demand, and in default of so doing, such Mortgagor may also be dispossessed by summary proceedings or otherwise. In case of the appointment of a receiver of rents and profits of the Mortgaged Premises, the covenants of this paragraph may be enforced by such receiver.

Section 14.07. No recovery of any judgment by the Mortgagee and no levy of an execution under any judgment upon the Mortgaged Premises or upon any other property of the Mortgagor shall affect in any manner or to any extent, the lien of this Mortgage upon the Mortgaged Premises or any part thereof, or any liens, rights, powers or remedies of the Mortgagee hereunder, but such liens, rights, powers and remedies of the Mortgagee shall continue unimpaired as before.

Section 14.08. In the event that Mortgagee shall have the right to foreclose this Mortgage, Mortgagor authorizes Mortgagee at its option to foreclose such mortgage subject to the rights of any tenants of the Mortgaged Premises, and the failure to make any such tenants parties defendant to any such foreclosure proceeding and to foreclose their rights will not be asserted by Mortgagor as a defense to any proceeding instituted by Mortgagee to collect the indebtedness secured by this Mortgage or any deficiency remaining unpaid after the foreclosure sale of the Mortgaged Premises.

Section 14.09. Neither Mortgagor nor any other person now or hereafter obligated for the payment of the whole or any part of the sums now or hereafter secured by this Mortgage shall be relieved of such obligation by reason of the failure of Mortgagee to comply with any request of Mortgagor or of any other person so obligated to take action to foreclose this Mortgage or otherwise enforce any of the provisions of this Mortgage or of any obligations secured hereby, or by reason of the release, regardless of consideration, of the whole or any part of the security held for the indebtedness secured by this Mortgage, or by reason of any agreement or stipulation between any subsequent owner or owners of the Mortgaged Premises and Mortgagee extending the time of payment or modifying the terms of this Mortgage or the Note without first having obtained the consent of Mortgagor or such other person, and in the latter event, Mortgagor and all such other persons shall continue to be liable to Mortgagee to the same extent and according to the terms of any such agreement of extension or modification unless expressly released and discharged in writing by Mortgagee. Regardless of consideration, and without necessity for any notice to or consent by the holder of any subordinate lien on the Mortgaged Premises, Mortgagee may release the obligation of anyone at any time liable for any of the indebtedness secured by this Mortgage or any part of the security held for the indebtedness and may extend the time of payment or otherwise modify the terms hereof without, as to the security or the remainder thereof, in any way impairing or affecting the lien created by this Mortgage or the priority of such lien, as security for the payment of the indebtedness, as it may be so extended or modified, over any subordinate lien. The holder of any subordinate lien shall have no right to terminate any lease affecting the Mortgaged Premises whether or not such lease

26

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM

NYSCEF DOC. NO. 4

INDEX NO. 69506/2022

RECEIVED NYSCEF: 12/19/2022

be subordinate to its mortgage. For the payment of the indebtedness secured hereby Mortgagee may resort to any other security therefor held by Mortgagee in such order and manner as Mortgagee may elect.

## ARTICLE XV

### Financial Covenants

Section 15.01. During the term of this Mortgage, the Mortgagor shall deliver to the Mortgagee on an annual basis signed copies of its tax returns (both State and Federal and including all schedules attached thereto) within thirty (30) days of filing. In addition, the Mortgagor shall cause Guarantors, (collectively the "Guarantors") to deliver to the Mortgagee on an annual basis signed copies of their tax returns (both State and Federal and including all schedules attached thereto) within thirty (30) days of filing. The Mortgagor and the Guarantors shall also deliver copies of their annual statements of personal and business financial condition on an annual basis within one hundred twenty (120) days of calendar year end. Mortgagor shall also deliver to Mortgagee on an annual basis, verification of liquid assets and contingent liabilities of Mortgagor and Guarantors in sufficient detail to reasonably satisfy the Mortgagee. Mortgagor shall submit to Mortgagee on an annual basis, a current, complete rent roll and detailed income and expense statement for the Mortgaged Premises and copies of all new and or modified and executed lease agreements at the Mortgaged Premises. Mortgagor and Guarantors shall deliver to Mortgagee upon request, such other financial reports, schedules, and business information of the Mortgagor and Guarantors as the Mortgagee may reasonably require. All such financial statements shall be in form and content reasonably acceptable to the Mortgagee. In the event Mortgagor does not make all reasonable attempts to comply with any or all of the financial information reporting requirements set forth herein, in addition to any other remedy which the Mortgagee may possess in connection with Mortgagor's failure to comply with said reporting requirements, the Mortgagee may impose a charge of $50.00 dollars per day upon Mortgagor which charge shall commence ten (10) days after notice to Mortgagor that Mortgagor is in default with respect to Mortgagor's obligations to supply said financial reporting information to Mortgagee.

Section 15.02. During the term of this Mortgage, the Mortgagor shall maintain an interest rate reserve to pay for all amounts due under the Consolidated Note.

Section 15.03. The Mortgagor will be responsible for all of the Mortgagee's expenses, including but not limited to, reasonable legal, appraisal, engineering, environmental, survey and title insurance related to the closing of the loan to be evidenced by the Note.

Section 15.04. At all times during the term of this Mortgage, the Mortgagor shall be required to subordinate all loans due affiliates, officers, directors, members, managers or stockholders. No principal payments shall be permitted on any such loans without the consent of the Mortgagee and a document shall be executed at closing by all members and/or guarantors evidencing same.

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM

NYSCEF DOC. NO. 4

INDEX NO. 69506/2022

RECEIVED NYSCEF: 12/19/2022

## ARTICLE XVI

### Invalidity of Particular Provisions

Section 16.01. If any term or provision of this Mortgage or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Mortgage or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Mortgage shall be valid and be enforced to the fullest extent permitted by law.

## ARTICLE XVII

### Notices

Section 17.01. All notices, demands, requests and consents required under this Mortgage shall be in writing. All such notices, demands, requests and consent shall be deemed to have been properly given three (3) business days after the mailing thereof if sent by United States certified mail, postage prepaid, addressed to Mortgagor at 32 Cutler Road, Greenwich, Ct. 06832 or to such other address as Mortgagor or Mortgagee may from time to time designate by notice given in accordance with the provisions of this Article XVII. Anything herein to the contrary notwithstanding, the failure of either party to send a copy of the notices to the attorney representing the other party shall in no way affect the validity of such notice.

Section 17.02. If at any time during the term of this Mortgage more than one person or corporation shall be the owner of the Mortgaged Premises, and Mortgagor has failed to designate one address to which all notices hereunder are to be sent, then any notices, demands or requests given by Mortgagee to any one of such persons or corporations shall be deemed to have been duly given to Mortgagor for all purposes under this Mortgage, and any notices, demands or requests given by any one of such persons or corporations owning the Mortgaged Premises to Mortgagee shall be deemed to have been duly given by Mortgagor for all purposes under this Mortgage, it being the intention that each person or corporation owning the Mortgaged Premises irrevocably designates all other such persons or corporations, or any one of them, as their, his or its agent for the purpose of giving and receiving all notices, demands, requests and consents required under this Mortgage.

ARTICLE XVIII

Definition of Certain Terms, Etc.

Section 18.01. For purposes of this Mortgage, unless the context otherwise requires:

(a) The term "Building" or "Buildings" shall mean the buildings and all other improvements to be constructed on the Mortgaged Premises on or after the date of this Mortgage and any restoration or replacement thereof pursuant to the provisions hereof.

(b) The term "Mortgage" shall mean this Mortgage.

(c) The term "Mortgaged Premises" shall mean the land, easements, and other rights described here in, including the Building, on-site utilities and related facilities and improvements, described in Schedule A and Section 13.28 hereof together with all rights appurtenant thereto, and any and all condemnation awards, insurance proceeds and other monies paid in connection with or in respect thereof.

(d) The term "unavoidable delays" shall mean delays due to strike, lockout or other labor or industrial disturbance (whether or not on the part of employees of Mortgagor), civil disturbance, future valid order of any government, court or regulatory body having proper jurisdiction, act of the public enemy, war, riot, sabotage, blockade, embargo, failure or inability to secure materials or labor by reason of priority of similar regulations or orders of any governments or of God or any cause whatsoever beyond the reasonable control of Mortgagor whether or not similar to the causes hereinbefore enumerated.

Section 18.02. The captions of this Mortgage are for convenience and reference only and in no way define, limit or describe the scope or intent of the Mortgage nor in any way affect this Mortgage.

Section 18.03. This Mortgage shall be construed and enforced in accordance with the laws of the State of New York.

ARTICLE XIX

Covenants to Bind and Benefit Respective Parties

Section 19.01. This Mortgage shall bind and inure to the benefit of the respective successors and assigns of Mortgagor and of Mortgagee and cannot be changed or terminated orally, and any written agreement or agreements hereafter entered into by Mortgagee which (a) extends the balance of such indebtedness, (b) changes or modifies the time or times of payment or the amounts in installments or fixed sums or the interest or the rate thereof, (c) changes, modifies, extends, renews or terminates other terms, provisions, covenants or conditions of this Mortgagor evidence of indebtedness secured by this Mortgage, or (d) consolidates, spreads, releases or severs the lien of this Mortgage shall be effective in accordance with the terms and provisions thereof and shall be binding

29

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM
NYSCEF DOC. NO. 4

INDEX NO. 69506/2022
RECEIVED NYSCEF: 12/19/2022

according to the tenor thereof on the owner or holder of subordinate, intervening or subsequent liens on the premises and property covered by this Mortgage and any such lien shall continue to be subject and subordinate to this Mortgage and any such agreement or agreements.

[SIGNATURE PAGE TO FOLLOW]

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM
NYSCEF DOC. NO. 4

INDEX NO. 69506/2022
RECEIVED NYSCEF: 12/19/2022

IN WITNESS WHEREOF, the Mortgagor has caused this Mortgage to be duly executed and has affixed its seal hereto.

The Complex at Port Chester, LLC

By:
Name: Michael Caridi
Title:   member

Jill Caridi

Michael Caridi

31

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM    INDEX NO. 69506/2022

NYSCEF DOC. NO. 4    RECEIVED NYSCEF: 12/19/2022

STATE OF NEW YORK        )
                                 ) ss:

COUNTY OF WESTCHESTER    )

On the 2`7 day of May in the year 2022 before me, the undersigned, a Notary Public in and for said State, personally appeared Michael Caridi personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the person upon behalf of which the individual acted, executed the instrument.



Joseph Rabadi
Notary Public, State of New York
No. 01RA6334560
Qualified in Westchester County
Commission Expires December 21, 2023

Notary Public

STATE OF NEW YORK        )
                                 ) ss:

COUNTY OF WESTCHESTER    )

On the 2`7 day of May in the year 2022 before me, the undersigned, a Notary Public in and for said State, personally appeared Jill Caridi personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in his capacity and that by her signature on the instrument, the person upon behalf of which the individual acted, executed the instrument.

Joseph Rabadi
Notary Public, State of New York
No. 01RA6334560
Qualified in Westchester County
Commission Expires December 21, 2023

Notary Public

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM          INDEX NO. 69506/2022
NYSCEF DOC. NO. 4                                          RECEIVED NYSCEF: 12/19/2022

All that certain plot, piece or parcel of land, situate, lying and being in the Village of Port Chester, Town of Rye, County of Westchester in the State of New York, being more particularly bounded and described as follows:

BEGINNING at a point on East Broadway at the southwest corner of the land now or formerly of John Fuchs;

RUNNING THENCE along the said land now or formerly of John Fuchs, South 63 degrees 55 minutes East a distance of 90.46 feet and South 68 degrees 12 minutes East, a distance of 72.87 feet to South Main Street;

THENCE Southwesterly, along South Main Street, forming an angle on its Westerly side with the last mentioned line of 84 degrees 57 minutes, a distance of 37 feet to the land now or formerly of Robena Mersereau;

THENCE Northwesterly, along a line forming an angle on its Northerly side with the last mentioned line of 92 degrees 9 minutes, a distance of 68.87 feet along the land now or formerly of Robena Mersereau;

THENCE Southwesterly, along a line forming an angle on its Easterly side with the last mentioned line of 85 degrees 40 minutes, a distance of 7.84 feet along the land now or formerly of Robena Mersereau to the land now or formerly of Mary Keeley;

THENCE Northwesterly, along a line forming an angle on its Northerly side with the last mentioned line of 79 degrees 12 minutes, a distance of 97.45 feet along the land now or formerly of Mary Keeley to East Broadway; and

THENCE northeasterly, along East Broadway, forming an angle on its Easterly side with the last mentioned line of 90 degrees 40 minutes, a distance of 32.5 feet to the point or place of BEGINNING.

FOR INFORMATIONAL PURPOSES ONLY: Said premises being more commonly known as: 18 South Main Street Port Chester, New York Section: 142.30 Block: 2 Lot: 46

ALL that certain plot, piece or parcel of land, situate, lying and being in the Village of Port Chester, Town of Rye, County of Westchester and State of New York, and more particularly bounded and described as follows:

BEGINNING at a point in the northwesterly side of South Main Street distant southwesterly as measured along the same 244.75 feet from the corner formed by its intersection with the southwesterly side of Westchester Avenue, said point beginning being also at the southeasterly corner of the land now or formerly of Strunsky;

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM

NYSCEF DOC. NO. 4

INDEX NO. 69506/2022

RECEIVED NYSCEF: 12/19/2022

RUNNING THENCE along the last mentioned land in a northwesterly direction and on a line forming an interior angle of 87 degrees, 56 minutes, 40 seconds with the said northwesterly side of South Main Street, a distance of 68.87 feet to other land now or formerly of said Strunsky;

RUNNING THENCE along said last mentioned land and the lands now or formerly of Keeley in a southwesterly direction and on a line forming an interior angle of 85 degrees, 34 minutes 30 seconds with the last mentioned course 12.99 feet to the land now or formerly of Aschmann;.

THENCE along the last mentioned land in a southeasterly direction and on a line forming an interior angle of 94 degrees 25 minutes 30 seconds with the last mentioned course a distance of 67.41 feet to the northwesterly side of South Main Street aforesaid;

THENCE a northeasterly direction along the same 12.96 feet to the point or place of BEGINNING.

FOR INFORMATIONAL PURPOSES ONLY: Said premises commonly known as: 20 South Main Street Port Chester, New York 10573 Section 142.30 Blk:2 Lot 45

All that plot of land in the Village of Port Chester, Town of Rye, County of Weightiest and State of new York, bounded and described as follows:

BEGINNING at a point on the southeasterly side of East Roadway adjoining the southwest corner of land formerly of North J. Sands now or formerly of Glazing, said point of beginning being distant 247.57 feet southwesterly as measured along said southeasterly side of East Roadway from the corner formed by the intersecting of the southwesterly side of Westchester Avenue with said southeasterly side of East Broadway;

THENCE running along the southeasterly line of said land formerly of Norton J. Sands now or formerly of Gleason South 58 degrees 54 feet 40 inches East 97.42 feet the northwesterly line of land now or formerly of Aschman;

THENCE running along the northwesterly line of said land now or formerly of Aschman South 20 degrees 22 feet 10 inches West 50.00 feet to the northeast corner of land now or formerly of Marino;

THENCE running along the northeasterly line of said land now or formerly of Marino North 59 degrees 39 feet 20 inches West 10.21 fee to the southeasterly side of East Roadway;

THENCE running along the southeastely side of East Broadway, North 30 degrees 30 feet East 50.5 feet to the point or place of BEGINNING.

FOR INFORMATIONAL PURPOSES: SAID PREMISES also known as: 21 East Broadway Port Chester, New York Section 142.30, Blk: 2, Lot: 59

ALL that certain plot, piece or parcel of land, with the buidlings thereon erected, situate, lying and being in the Village of Port Chester, Town of Rye, County of Westchester and State of New York, bounded and described as follows:

BEGINNING at a point on the southwesterly side of East Broadway, where the same is intersected by the dividing line between lands formerly of Rocco Marino, deceased, and lands now or formerly of Anne C. Bree, which point is also distant 298.07 feet southwesterly from the corner formed by the intersection of the southeasterly side of East Broadway and southwesterly side of Westchester Avenue;

RUNNING THENCE along said dividing line on a course South 49 degrees, 12 minutes, 30 seconds, East 106.22 feet to a point;

RUNNING THENCE along the lands now or formerly of Bzekowitz on a course South 30 degrees, 49 minutes, West 51.77 feet to a point;

RUNNING THENCE through the lands formerly of Rocco Marino, deceased, on a course North 48 degrees, 41 minutes, West 115.78 feet to the southeasterly side of East Broadway;

RUNNING THENCE along East Broadway on a course North 41 degrees, 29 minutes, East 49.93 feet to the point or place of BEGINNNG.

FOR INFORMATIONAL PURPOSES: Said premises commonly known as: 25 East Broadway Port Chester, New York 10573 Section L: 142.30 Blk: 2 Lot: 60

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM

NYSCEF DOC. NO. 4

INDEX NO. 69506/2022

RECEIVED NYSCEF: 12/19/2022

**Schedule A Description**

Title Number **BA-22-3500**                                                                     Page    1

MERGED DEED

All that certain plot, piece of land situate, lying and being in the Village of Port Chester, Town of Rye, County of Westchester, State of New York, being more particularly bounded and described as follows:

BEGINNING at a point on the westerly boundary of South Main Street, said point being distant from the southwesterly line of Westchester Avenue as measured along westerly boundary of South Main Street a distance of 207.75 feet;

Running thence, from said Point of BEGINNING, S 27° 16' 08" W a distance of 49.96 feet to the easterly corner of lands now or formerly Simone Development Co.;

Thence, running along lands now or formerly Simone Development Co. and in continuation along lands now or formerly Village of Port Chester IDA, and lands now or formerly South Port Mew Preservation LP the following four (4) courses and distances:

1. N 64° 52' 52" W a distance of 67.41 feet; 2. S 20° 37' 41" W a distance of 51.66 feet; 3. S 19° 48' 50" W a distance of 44.97 feet; 4. N 58° 46' 49" W a distance of 117.32 feet to a point on the easterly boundary of East Broadway;

Thence, running along the easterly boundary of East Broadway; the following two (2) courses and distances:

1. N 31° 32' 10" E a distance of 100.53 feet; 2. N 30° 55' 08" E a distance of 32.50 feet to the westerly corner of lands now or formerly Sinis;

Thence, running along the southerly boundary of lands now or formerly Sinis the following two (2) courses and distances:

1. S 63° 29' 52" E a distance of 90.46 feet; 2. S 67° 46' 52" E a distance of 72.87 feet to the Point and Place of BEGINNING.

Continued On Next Page

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM    INDEX NO. 69506/2022

NYSCEF DOC. NO. 4    RECEIVED NYSCEF: 12/19/2022

## Schedule A Description - continued

Title Number **BA-22-3500**                                        Page    **2**

This description is based on a Boundary and Topographic Survey of 18 and 20
South Main Street — 21 and 25 East Broadway Lots 45, 46, 59 and 60 in Block 2
Town of Rye Village of Port Chester County of Westchester, NY

FOR INFORMATIONAL PURPOSES: Said premises now known as 18 South
Main Street Port Chester N.Y., Section 142.30 Block 2 Lot 67
(20 South Main Street SBL#142.30-2-45, 18 South Main Street
SBL#142.30-2-46, and 21 East Broadway SBL#142.30-2-59 have been merged)
and

Said premises commonly known as: 25 East Broadway Port Chester, New York
10573
Section 142.30 Blk: 2 Lot: 60

**FOR INFORMATION ONLY:**
Tax Designation:

County: **Westchester, t/o Rye, v/o Portchester**
                    Tax Section:**142.30**      Tax Block:**2**            Tax Lot:**67 AS MERGED**

Address: **18 South Main Street, Port Chester, NY 10573**

County: **Westchester, t/o Rye, v/o Portchester**
                    Tax Section:**142.30**      Tax Block:**2**            Tax Lot:**60**

Address: **25 East Broadway, Port Chester, NY 10573**

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM
NYSCEF DOC. NO. 4

### Schedule A Description - continued

Title Number BA-22-3500

Page   3

ALL those certain lots, pieces or parcels of land, situate, lying and being at Bridgehampton, Town of Southampton, County of Suffolk and State of New York, known and designated as the Southerly 8 feet of lot 4 and all of Lots 5 to 7 Inclusive in Block G on a certain map entitled, "Subdivision Map of H.L Hildreth Property at Bridgehampton New York," and filed in the Office of the Clerk of the County of Suffolk on May 20, 1926 as Map No. 227, and more specifically described according to survey thereof made by Theodore F. Squires, L.L.S. Southampton, N.Y. September 18, 1963 as follows:

BEGINNING at a moment set at the point of intersection of the Northerly line of Lot # 8 in Block G on the aforesaid map with the Westerly line of Hildreth Avenue, said monument being situate North 13 degrees 49 minutes 20 seconds East 280.00 feet from a monument set at the point of intersection of the Westerly line of Hildreth Avenue with the Northerly line of Sagaponack Road;

RUNNING THENCE from said point of beginning North 64 degrees 26 minutes 00 seconds West along the Northerly line of said Lot # 8 202.19 feet to a monument and the Easterly line of land of Roy and Ellen Ryan;

THENCE North 13 degrees 23 seconds 00 minutes East along the Easterly line of land of Roy and Ellen Ryan 128.21 feet to a monument;

THENCE South 64 degrees 26 minutes 00 seconds East through Lot # 4 In Block G on the aforesaid map 203.20 feet to a monument on the Westerly line of Hildreth Avenue;

THENCE South 13 degrees 49 minutes 20 seconds West along the Westerly line of Hildreth Avenue 128.00 feet to the monument at the point or place of BEGINNING.

FOR INFORMATIONAL PURPOSES ONLY: Said premises being more commonly known as: 38 Hildreth Avenue, NKA 96 Audubon Avenue, Bridgehampton, NY, Section 088.00, Block 02.00 Lot 027.000

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM    INDEX NO. 69506/2022
NYSCEF DOC. NO. 5                                          RECEIVED NYSCEF: 12/19/2022

EXHIBIT 4

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM    INDEX NO. 69506/2022
NYSCEF DOC. NO. 5                                                    RECEIVED NYSCEF: 12/19/2022

**BLACKACRE TITLE AGENCY CORP**
## 2900 WESTCHESTER AVENUE
## PURCHASE, NY 10577

### SCHEDULE B

### MORTGAGES AND ASSIGNMENTS OF RECORD

**Title No.** BA-22-3668

### MORTGAGE TO BE FORECLOSED
### One

| | |
|---|---|
| Mortgagors: | The Complex at Port Chester LLC |
| Mortgagees: | The Galinn Fund, LLC· |
| Amount: | $2,500,000.00 |
| Dated: | March 03, 2017 |
| Recorded: | April 20, 2017 |
| Control #: | 570873458 |

Note: Above covers a portion of subject premises.

### ASSIGNMENT OF LEASES AND RENTS

| | |
|---|---|
| Assignor: | The Complex At Port Chester, LLC |
| Assignee: | The Galinn Fund, LLC |
| Dated: | March 03, 2017 |
| Recorded: | April 20, 2017 |
| Control #: | 570873474 |

ASSIGNOR ASSIGNS TO ASSIGNEE ALL LEASES AND RENTS AS FURTHER SECURITY FOR THE FOLLOWING MORTGAGE(S)

**Control #:** 570873458

Note: Above covers a portion of subject premises.

BLACKACRE TITLE AGENCY CORP.
2900 WESTCHESTER AVENUE
PURCHASE, NY 10577

**MORTGAGE TO BE FORECLOSED**
**Two**

| | |
|---|---|
| Mortgagors: | The Complex at Port Chester LLC |
| Mortgagees: | The Galinn Fund, LLC |
| Amount: | $950,000.00 |
| Dated: | June 08, 2017 |
| Recorded: | July 25, 2017 |
| Control #: | 571783172 |

Note: Above covers a portion of subject premises.

**CONSOLIDATION, EXTENSION AND MODIFICATION AGREEMENT**

| | |
|---|---|
| Mtgor name: | The Complex at Port Chester LLC |
| Mtgee name: | The Galinn Fund LLC |
| Dated: | June 08, 2017 |
| Recorded: | July 25, 2017 |
| Control #: | 571783190 |

The following mortgages are hereby consolidated, extended, and modified, to form a single lien of $3,450,000.00

**Control #:** 570873458
**Control #:** 571783172

Note: Above covers a portion of subject premises.

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM    INDEX NO. 69506/2022

NYSCEF DOC. NO. 5    RECEIVED NYSCEF: 12/19/2022

BLACKACRE TITLE AGENCY CORP.
2900 WESTCHESTER AVENUE
PURCHASE, NY 10577

**ASSIGNMENT OF LEASES AND RENTS**

Assignor:        The Complex At Port Chester, LLC

Assignee:        The Galinn Fund, LLC

Recorded:        July 25, 2017

Control #:       571783212

ASSIGNOR ASSIGNS TO ASSIGNEE ALL LEASES AND RENTS AS FURTHER SECURITY
FOR THE FOLLOWING MORTGAGE(S)
**Control #:** 570873458
**Control #:** 571783172
Note: Above covers a portion of subject premises.

**MORTGAGE TO BE FORECLOSED
Three**

Mortgagors:      The Complex At Port Chester, LLC

Mortgagees:      The Galinn Fund, LLC

Amount:          $900,000.00
Dated:           November 01, 2017

Recorded:        December 01, 2017

Control #:       573123440

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM    INDEX NO. 69506/2022
NYSCEF DOC. NO. 5    RECEIVED NYSCEF: 12/19/2022

BLACKACRE TITLE AGENCY CORP.
2900 WESTCHESTER AVENUE
PURCHASE, NY 10577

**CONSOLIDATION, EXTENSION AND MODIFICATION AGREEMENT**

Mtgor name:      The Complex At Port Chester, LLC

Mtgee name:      The Galinn Fund, LLC

Dated:             November 01, 2017

Recorded:        December 01, 2017

Control #:        573123445

The following mortgages are hereby consolidated, extended, and modified, to form a single lien of $4,350,000.00

**Control #:** 570873458
**Control #:** 571783172
**Control #:** 573123440

**ASSIGNMENT OF LEASES AND RENTS**

Assignor:         The Complex At Port Chester, LLC

Assignee:        The Galinn Fund, LLC

Dated:             November 01, 2017

Recorded:        December 01, 2017

Control #:        573123479

ASSIGNOR ASSIGNS TO ASSIGNEE ALL LEASES AND RENTS AS FURTHER SECURITY FOR THE FOLLOWING MORTGAGE(S)

**Control #:** 570873458
**Control #:** 571783172
**Control #:** 573123440

BLACKACRE TITLE AGENCY CORP.
2900 WESTCHESTER AVENUE
PURCHASE, NY 10577

**MORTGAGE TO BE FORECLOSED**
**Four**

| | |
|---|---|
| Mortgagors: | The Complex At Port Chester, LLC |
| Mortgagees: | The Galinn Fund, LLC |
| Amount: | $750,000.00 |
| Dated: | March 20, 2018 |
| Recorded: | May 07, 2018 |
| Control #: | 580883319 |

**CONSOLIDATION, EXTENSION AND MODIFICATION AGREEMENT**

| | |
|---|---|
| Mtgor name: | The Complex At Port Chester, LLC |
| Mtgee name: | The Galinn Fund, LLC |
| Dated: | March 20, 2018 |
| Recorded: | May 07, 2018 |
| Control #: | 580883346 |

The following mortgages are hereby consolidated, extended, and modified, to form a single lien of $5,100,000.00

**Control #:** 570873458
**Control #:** 571783172
**Control #:** 573123440
**Control #:** 580883319

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM          INDEX NO. 69506/2022

NYSCEF DOC. NO. 5                                                      RECEIVED NYSCEF: 12/19/2022

BLACKACRE TITLE AGENCY CORP.
2900 WESTCHESTER AVENUE
PURCHASE, NY 10577

### ASSIGNMENT OF LEASES AND RENTS

| | |
|---|---|
| Assignor: | The Complex At Port Chester, LLC |
| Assignee: | The Galinn Fund, LLC |
| Dated: | March 20, 2018 |
| Recorded: | May 07, 2018 |
| Control #: | 580943298 |

ASSIGNOR ASSIGNS TO ASSIGNEE ALL LEASES AND RENTS AS FURTHER SECURITY
FOR THE FOLLOWING MORTGAGE(S)
**Control #:** 570873458
**Control #:** 571783172
**Control #:** 573123440
**Control #:** 580883319

### MORTGAGE TO BE FORECLOSED
### Five

| | |
|---|---|
| Mortgagors: | The Complex At Port Chester, LLC |
| Mortgagees: | The Galinn Fund, LLC |
| Amount: | $2,600,000.00 |
| Dated: | July 19, 2018 |
| Recorded: | July 30, 2018 |
| Control #: | 582113141 |

Note: Above mortgage covers subject premises and more.

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM    INDEX NO. 69506/2022

NYSCEF DOC. NO. 5    RECEIVED NYSCEF: 12/19/2022

BLACKACRE TITLE AGENCY CORP.
2900 WESTCHESTER AVENUE
PURCHASE, NY 10577

## CONSOLIDATION, EXTENSION AND MODIFICATION AGREEMENT

Mtgor name:     The Complex At Port Chester, LLC

Mtgee name:     The Galinn Fund, LLC

Dated:          July 19, 2018

Recorded:       July 30, 2018

Control #:      582113161

The following mortgages are hereby consolidated, extended, and modified, to form a single lien of $7,700,000.00

**Control #:** 570873458
**Control #:** 571783172
**Control #:** 573123440
**Control #:** 580883319
**Control #:** 582113141

Note: Above agreement covers subject premises and more.

## ASSIGNMENT OF LEASES AND RENTS

Assignor:       The Complex At Port Chester, LLC

Assignee:       The Galinn Fund, LLC

Dated:          July 19, 2018

Recorded:       July 30, 2018

Control #:      582113186

ASSIGNOR ASSIGNS TO ASSIGNEE ALL LEASES AND RENTS AS FURTHER SECURITY FOR THE FOLLOWING MORTGAGE(S)

**Control #:** 570873458
**Control #:** 571783172
**Control #:** 573123440
**Control #:** 580883319
**Control #:** 582113141

Note: Above covers subject premises and more.

Case 7:22-cv-10701-KMK    Document 8-1    Filed 01/30/23    Page 70 of 83

BLACKACRE TITLE AGENCY CORP
2900 WESTCHESTER AVENUE
PURCHASE, NY 10577

## MORTGAGE TO BE FORECLOSED
### Six

Mortgagors:      The Complex At Port Chester LLC

Mortgagees:      The Galinn Fund, LLC

Amount:          $2,750,000.00

Dated:           August 09, 2021

Recorded:        August 18, 2021

Control #:       612243423

Note: Above mortgage covers subject premises and more.

## CONSOLIDATION, EXTENSION AND MODIFICATION AGREEMENT

Mtgor name:      The Complex At Port Chester LLC

Mtgee name:      The Galinn Fund, LLC

Dated:           August 09, 2021

Recorded:        August 18, 2021

Control #:       612283879

The following mortgages are hereby consolidated, extended, and modified, to form a single lien of $8,400,000.00

**Control #:** 570873458

**Control #:** 571783172

**Control #:** 573123440

**Control #:** 580883319

**Control #:** 582113141

**Control #:** 612243423

Note: Above agreement covers subject premises and more.

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM    INDEX NO. 69506/2022

NYSCEF DOC. NO. 5    RECEIVED NYSCEF: 12/19/2022

BLACKACRE TITLE AGENCY CORP.
2900 WESTCHESTER AVENUE
PURCHASE, NY 10577

### ASSIGNMENT OF LEASES AND RENTS

Assignor:      The Complex At Port Chester LLC

Assignee:      The Galinn Fund, LLC

Dated:         August 09, 2021

Recorded:      August 18, 2021

Control #:     612283888

ASSIGNOR ASSIGNS TO ASSIGNEE ALL LEASES AND RENTS AS FURTHER SECURITY
FOR THE FOLLOWING MORTGAGE(S)

**Control #:** 570873458
**Control #:** 571783172
**Control #:** 573123440
**Control #:** 580883319
**Control #:** 582113141
**Control #:** 612243423

### MORTGAGE TO BE FORECLOSED
#### Seven

Mortgagors:    The Complex At Port Chester LLC

Mortgagees:    The Galinn Fund, LLC

Amount:        $1,250,000.00

Dated:         May 23, 2022

Recorded:      June 07, 2022

Control #:     621573788

Note: Above mortgage covers subject premises and more.

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM

INDEX NO. 69506/2022

NYSCEF DOC. NO. 5

RECEIVED NYSCEF: 12/19/2022

BLACKACRE TITLE AGENCY CORP.
2900 WESTCHESTER AVENUE
PURCHASE, NY 10577

**CONSOLIDATION, EXTENSION AND MODIFICATION AGREEMENT**

Mtgor name:        The Complex At Port Chester LLC

Mtgee name:        The Galinn Fund, LLC

Dated:             May 23, 2022

Recorded:          June 07, 2022

Control #:         621573791

The following mortgages are hereby consolidated, extended, and modified, to form a single lien of $9,650,000.00

**Control #:** 570873458
**Control #:** 571783172
**Control #:** 573123440
**Control #:** 580883319
**Control #:** 582113141
**Control #:** 612243423
**Control #:** 621573788

Note: Above agreement covers subject premises and more.

**ASSIGNMENT OF LEASES AND RENTS**

Assignor:          The Complex At Port Chester LLC

Assignee:          The Galinn Fund, LLC

Recorded:          June 07, 2022

Control #:         621573803

ASSIGNOR ASSIGNS TO ASSIGNEE ALL LEASES AND RENTS AS FURTHER SECURITY FOR THE FOLLOWING MORTGAGE(S)

**Control #:** 570873458
**Control #:** 571783172
**Control #:** 573123440
**Control #:** 580883319
**Control #:** 582113141
**Control #:** 612243423
**Control #:** 621573788

Note: Above covers subject premises and more.

INDEX NO. 69506/2022
NYSCEF DOC. NO. 6
RECEIVED NYSCEF: 12/19/2022

EXHIBIT 5

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM

NYSCEF DOC. NO. 6

INDEX NO. 69506/2022

RECEIVED NYSCEF: 12/19/2022

## BLACKACRE TITLE AGENCY CORP.
## 2900 WESTCHESTER AVENUE
## PURCHASE, NY 10577

### SCHEDULE B- CONTINUED

### MORTGAGES AND ASSIGNMENTS OF RECORD

**Title No.** BA-22-3668

### SUBORDINATE MORTGAGES

Note: Mortgages contained in this section will be cut-off in the action

### MORTGAGE
### One

| | |
|---|---|
| Mortgagors: | Michael Caridi and Jill Caridi and The Complex At Port Chester LLC |
| Mortgagees: | Samr Consulting, Inc. |
| Amount: | $750,000.00 |
| Dated: | September 06, 2019 |
| Recorded: | January 06, 2020 |
| Control #: | 593183102 |

Note: Above mortgage covers subject premises and more.

### SUBORDINATION AGREEMENT

| | |
|---|---|
| Party of the first part: | SAMR Consulting, Inc. |
| Party of the second part: | The Galinn Fund, LLC |
| Dated: | August 09, 2021 |
| Recorded: | August 18, 2021 |
| Control #: | 612283897 |

The following mortgages(s) is hereby made subordinate to mortgage(s) about to be recorded in the amount of $8,400,000

**Control #:** 593183102

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM

NYSCEF DOC. NO. 6

INDEX NO. 69506/2022

RECEIVED NYSCEF: 12/19/2022

# BLACKACRE TITLE AGENCY CORP.
# 2900 WESTCHESTER AVENUE
# PURCHASE, NY 10577

## SUBORDINATION AGREEMENT

| | |
|---|---|
| Party of the first part: | Samr Consulting, Inc. |
| Party of the second part: | The Galinn Fund, LLC |
| Dated: | May 23, 2022 |
| Recorded: | June 07, 2022 |
| Control #: | 621573808 |

The following mortgages(s) is hereby made subordinate to mortgage(s) about to be recorded in the amount of $9,650,000

**Control #:** 593183102

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM
NYSCEF DOC. NO. 6

INDEX NO. 69506/2022

RECEIVED NYSCEF: 12/19/2022

# BLACKACRE TITLE AGENCY CORP.
## 2900 WESTCHESTER AVENUE
## PURCHASE, NY 10577

**SCHEDULE B**

**MORTGAGES AND ASSIGNMENTS OF RECORD**

**Title No.** BA-22-3668

**MORTGAGE TO BE FORECLOSED**
**One**

| | |
|---|---|
| Mortgagors: | The Complex at Port Chester LLC, Jill Caridi and Michael Caridi |
| Mortgagees: | The Galinn Fund, LLC |
| Amount: | $2,600,000.00 |
| Dated: | July 19, 2018 |
| Recorded: | September 10, 2018 |
| Liber: | 22957 |
| Page: | 985 |

Note: Above Mortgage was also recorded in Westchester County, in Control No. 582113141. Note: Above Mortgage covers subject premises and more.

**CONSOLIDATION, EXTENSION AND MODIFICATION AGREEMENT**

| | |
|---|---|
| Mtgor name: | The Complex at Port Chester, LLC, Jill Caridi and Michael Caridi |
| Mtgee name: | The Galinn Fund, LLC |
| Dated: | July 19, 2018 |
| Recorded: | September 10, 2018 |
| Liber: | 22957 |
| Page: | 986 |

The following mortgages are hereby consolidated, extended, and modified, to form a single lien of $7,700,000.00

**Liber:** 22957 **Page:** 985

Note: Above Agreement was also recorded in Westchester County in Control No. 582113161. Note: Above agreement includes mortgages recorded in Westchester County. Note: Above Agreement covers subject premises and more.

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM    INDEX NO. 69506/2022

NYSCEF DOC. NO. 6    RECEIVED NYSCEF: 12/19/2022

## BLACKACRE TITLE AGENCY CORP.
## 2900 WESTCHESTER AVENUE
## PURCHASE, NY 10577

### ASSIGNMENT OF LEASES AND RENTS

Assignor:          Complex at Port Chester LLC and Jill Caridi and Michael Caridi

Assignee:          Galinn Fund, LLC

Dated:             July 19, 2018

Recorded:          September 10, 2018

Liber:             12977

Page:              676

ASSIGNOR ASSIGNS TO ASSIGNEE ALL LEASES AND RENTS AS FURTHER SECURITY FOR THE FOLLOWING MORTGAGE(S)

**Liber:** 22957 **Page:** 985

Note: Above assignment was also recorded in Westchester County in Control No. 582113186. Note: Above assignment includes mortgages recorded in Westchester County. Note: Above assignment covers subject premises and more.

### MORTGAGE TO BE FORECLOSED
### Two

Mortgagors:        The Complex at Port Chester, LLC, Jill Caridi and Michael Caridi

Mortgagees:        The Galinn Fund, LLC

Amount:            $2,750,000.00

Dated:             August 09, 2021

Recorded:          April 20, 2022

Liber:             23407

Page:              646

Note: Above mortgage was also recorded in Westchester County in Control No. 612243423. Note: Above mortgage covers subject premises and more.

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM
NYSCEF DOC. NO. 6

INDEX NO. 69506/2022
RECEIVED NYSCEF: 12/19/2022

## BLACKACRE TITLE AGENCY CORP.
## 2900 WESTCHESTER AVENUE
## PURCHASE, NY 10577

### SPREADER AGREEMENT

| | |
|---|---|
| Mtgor name: | The Complex at Port Chester, LLC, Jill Caridi and Michael Caridi |
| Mtgee name: | The Galinn Fund, LLC |
| Dated: | August 09, 2021 |
| Recorded: | August 08, 2022 |
| Liber: | 23445 |
| Page: | 833 |

The following mortgage(s) now covering premises known as 25 East Broadway and 18 South Main Street, Port Chester, NY are hereby spread to now affect premises known as 96 Audubon Avenue

Note: Above agreement covers subject premises and more. Note: Above agreement includes mortgages recorded in Westchester County.

### CONSOLIDATION, EXTENSION AND MODIFICATION AGREEMENT

| | |
|---|---|
| Mtgor name: | The Complex at Port Chester, LLC, Jill Caridi and Michael Caridi |
| Mtgee name: | The Galinn Fund, LLC |
| Dated: | August 09, 2021 |
| Recorded: | August 08, 2022 |
| Liber: | 23445 |
| Page: | 834 |

The following mortgages are hereby consolidated, extended, and modified, to form a single lien of $8,400,000.00

**Liber:** 23407 **Page:** 646

Note: Above agreement was also recorded in Westchester County in Control No. 612283879. Note: Above agreement includes mortgages recorded in Westchester County. Note: Above agreement covers subject premises and more. Note: Above agreement contains errors. See exception #21 of Schedule D.

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM    INDEX NO. 69506/2022
NYSCEF DOC. NO. 6                                          RECEIVED NYSCEF: 12/19/2022

# BLACKACRE TITLE AGENCY CORP.
## 2900 WESTCHESTER AVENUE
## PURCHASE, NY 10577

### MORTGAGE TO BE FORECLOSED
### Three

| | |
|---|---|
| Mortgagors: | The Complex at Port Chester, LLC, Jill Caridi and Michael Caridi |
| Mortgagees: | The Galinn Fund, LLC |
| Amount: | $1,250,000.00 |
| Dated: | May 23, 2022 |
| Recorded: | August 08, 2022 |
| Liber: | 23445 |
| Page: | 836 |

Note: Above mortgage covers subject premises and more.

### SPREADER AGREEMENT

| | |
|---|---|
| Mtgor name: | The Complex at Port Chester, LLC, Jill Caridi and Michael Caridi |
| Mtgee name: | The Galinn Fund, LLC |
| Dated: | May 23, 2022 |
| Recorded: | August 08, 2022 |
| Liber: | 23445 |
| Page: | 837 |

The following mortgage(s) now covering premises known as 18 South Main Street and 25 East Broadway, Port Chester, NY are hereby spread to now affect premises known as 96 Audubon Avenue

**Liber:** 23407  **Page:** 646

Note: Above agreement covers subject premises and more. Note: Above agreement includes mortgages recorded in Westchester County.

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM

NYSCEF DOC. NO. 6

INDEX NO. 69506/2022

RECEIVED NYSCEF: 12/19/2022

# BLACKACRE TITLE AGENCY CORP.
## 2900 WESTCHESTER AVENUE
## PURCHASE, NY 10577

### CONSOLIDATION, EXTENSION AND MODIFICATION AGREEMENT

| | |
|---|---|
| Mtgor name: | The Complex at Port Chester, LLC, Jill Caridi and Michael Caridi |
| Mtgee name: | The Galinn Fund, LLC |
| Dated: | May 23, 2022 |
| Recorded: | August 08, 2022 |
| Liber: | 23445 |
| Page: | 838 |

The following mortgages are hereby consolidated, extended, and modified, to form a single lien of $9,650,000.00

**Liber:** 23407 **Page:** 646
**Liber:** 23445 **Page:** 836

Note: Above agreement covers subject premises and more. Note: Above agreement includes mortgages recorded in Westchester County. Note: Above agreement contains errors. See exception #21 of Schedule D.

### ASSIGNMENT OF LEASES AND RENTS

| | |
|---|---|
| Assignor: | Complex at Port Chester LLC and Jill Caridi and Michael Caridi |
| Assignee: | Galinn Fund, LLC |
| Dated: | May 23, 2022 |
| Recorded: | August 08, 2022 |
| Liber: | 13168 |
| Page: | 129 |

ASSIGNOR ASSIGNS TO ASSIGNEE ALL LEASES AND RENTS AS FURTHER SECURITY FOR THE FOLLOWING MORTGAGE(S)

**Liber:** 23407 **Page:** 646
**Liber:** 23445 **Page:** 836

Note: Above assignment covers subject premises and more. Note: Above agreement includes mortgages recorded in Westchester County.

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM    INDEX NO. 69506/2022
NYSCEF DOC. NO. 6                                        RECEIVED NYSCEF: 12/19/2022

# BLACKACRE TITLE AGENCY CORP.
## 2900 WESTCHESTER AVENUE
## PURCHASE, NY 10577

### SCHEDULE B- CONTINUED

### MORTGAGES AND ASSIGNMENTS OF RECORD

**Title No.** BA-22-3668

### PRIOR MORTGAGES

Note: Mortgages contained in this section will not be cut-off in the action

### MORTGAGE
### One

| | |
|---|---|
| Mortgagors: | Michael Caridi and Jill Caridi |
| Mortgagees: | Berkshire Financial Group, Inc. |
| Amount: | $942,500.00 |
| Dated: | June 22, 2006 |
| Recorded: | September 18, 2006 |
| Liber: | 21384 |
| Page: | 174 |

### ASSIGNMENT OF MORTGAGE

| | |
|---|---|
| Assignor: | Federal Deposit Insurance Corporation |
| Assignee: | OneWest Bank, FSB |
| Dated: | February 14, 2011 |
| Recorded: | April 07, 2014 |
| Liber: | 22476 |
| Page: | 799 |

THE FOLLOWING MORTGAGE(S) ARE HEREBY ASSIGNED
**Liber:** 21384 **Page:** 174

FILED: WESTCHESTER COUNTY CLERK 12/19/2022 01:56 PM
NYSCEF DOC. NO. 6

INDEX NO. 69506/2022
RECEIVED NYSCEF: 12/19/2022

# BLACKACRE TITLE AGENCY CORP.
## 2900 WESTCHESTER AVENUE
## PURCHASE, NY 10577

### ASSIGNMENT OF MORTGAGE

| | |
|---|---|
| Assignor: | OneWest Bank, FSB |
| Assignee: | Mortgage Electronic Registration Systems, Inc. as nominee for New Penn Financial, LLC |
| Dated: | July 24, 2013 |
| Recorded: | April 07, 2014 |
| Liber: | 22476 |
| Page: | 800 |

THE FOLLOWING MORTGAGE(S) ARE HEREBY ASSIGNED
**Liber:** 21384 **Page:** 174

### CONSOLIDATION, EXTENSION AND MODIFICATION AGREEMENT

| | |
|---|---|
| Mtgor name: | Michael Caridi and Jill Caridi |
| Mtgee name: | Mortgage Electronic Registration Systems, Inc. as nominee for New Penn Financial, LLC |
| Dated: | October 31, 2013 |
| Recorded: | April 07, 2014 |
| Liber: | 22476 |
| Page: | 801 |

The following mortgages are hereby consolidated, extended, and modified, to form a single lien of $625,000.00
**Liber:** 21384 **Page:** 174